## FISHBACK v. BRAMEL.

APPEAL AND ERROR — BILL OF EXCEPTIONS — ELECTIONS — EVI-
DENCE — BALLOTS AS EVIDENCE IN CONTESTED ELECTIONS.

1. The rule of court requiring briefs of counsel to contain a
statement of the points and authorities relied on is not vio-
lated because of the mere fact that the points or authorities
are inapplicable.

2. The certificate of the stenographer who took notes of the
testimony furnishes, in the Supreme Court, no vitality to a
bill of exceptions. The bill is required to be otherwise signed
and authenticated. The stenographer's certificate may be
omitted, but if embodied in the bill, it is immaterial whether
it states that the bill contains all the evidence given in the
cause or not.

3. Whether the bill contains all the evidence must be disclosed
either in the bill itself or in the certificate of the judge who
allows and signs the same.

4. The name of a candidate for an office who has been nomi-
nated by two political parties is not entitled to be printed
twice upon the official ballot.

5. Where the name of such a candidate is improperly printed
in two places upon the ballot, the irregularity is waived if
before the election no objection is made in the manner pointed
out by law, and no application is made to have the mistake
corrected.

6. Testimony examined and held not to support an allegation
that contestant was unavoidably prevented from making the
proper application to enforce the correction of the error.

7. The peremptory refusal of a trial court to receive further
proof to show that alleged original ballots offered in evidence
are genuine can only be justified by such a condition of the
ballots themselves as to reasonably convince the court that
it would be without the range of possibilities to furnish any
satisfactory proof that they had been so preserved as to render
it reasonably certain they had not been molested, but were
in fact the ballots and all the ballots actually cast and
counted.

8. Unless the ballots produced in court, or the packages con-
taining them, furnish in themselves unmistakable evidence of

having been disturbed, the party offering them should be permitted to produce legal and complete evidence to establish their genuineness, if an offer is made to do so.

9.    An alleged error in refusing to receive further evidence touching the genuineness of ballots offered in evidence can not be considered when no offer of proof.was made on the trial, from which it can be ascertained that the party was prepared to produce any other material evidence sufficient to establish the authenticity of the ballots.

10.    The conclusion of the trial court upon the question of the identity of the ballots offered in evidence should not be lightly disturbed.

11.    The returns of the election officers, upon which the official canvass is based, constitute the primary, and are *prima facie* evidence of the result of the election.

12.    To establish the incorrectness of election returns the burden rests upon the person attacking them.

13.    To authorize the admission of the ballots to impeach the official returns, it must be shown with a reasonable degree of certainty that the ballots offered are genuine.

14.    If ballots have been actually preserved intact and without molestation or interference, they amount to the highest and best evidence, but the party tendering them must satisfactorily prove that they have been so cared for and zealously guarded as to avoid any reasonable probability that they may have been disturbed.

15.    The object of the statutory requirements for the enclosing of ballots in a sealed package is to render them more secure from unauthorized interference, and attach greater reliability to them as evidence in case of necessity.

16.    The absence of the seal would not of itself exclude the ballots, if it should be satisfactorily established by legal evidence that they had remained inviolate.

17.    If not sealed, greater difficulty must be encountered in establishing their identity.

18.    There being no evidence given or offered to show the care exercised in the preservation of the ballots before delivery to the county clerk, and in view of the testimony showing the care of the ballots after delivery to the county clerk'

which is examined and referred to, it is held that the court properly excluded them from the evidence.

[Decided, April 27, 1896. Amended petition filed in the District Court, March 26, 1895.]

ERROR to the District Court for the county of Albany, HON. J. H. HAYFORD, Judge.

This was an action brought by William H. Fishback to contest the election of Charles W. Bramel to the office of county and prosecuting attorney of Albany County. The material facts are stated in the opinion.

William H. Fishback, for plaintiff in error. Cited State v. Allen (Neb.), 62 N. W., 35; 95 S. C., 16; Budd v. Holden, 28 Cal.; Ellis v. Glaser (Mich.), 61 N. W., 543; Sawin v. Pease (Wyo.); Bradstreet v. Thomas, 4 Pet., 26; R. S. Secs. 2645, 2647, 2648.

Charles W. Bramel, for defendant in error. Cited on the motion to dismiss, 40 Ill., 57; Gray v. Schenck, 3 How. Pr., 231; Parker v. Hastings, 12 Ind., 654; Dedford v. Urbain, 42 Ind., 476; Gardner v. Stover, 43 Ind., 356; Millikan v. State, 70 Ind., 283; Donovan v. Stewart, 15 Ind., 493; Crisman v. Mathers, 23 Ind., 319; Crawford v. Heysinger, 123 U. S., 589; Branch v. Tex., L. Co., 53 Fed., 849; Mc Gill v. Monette, 1 Ala., Sel. cases, 285; Jordan v. Sayre, 24 Fla., 1; Roberts v. Wilkinson, 34 Mich., 129; Smith v. Bean, 46 Minn., 139; 18 Ind., 285; 20 id., 237, 255; 6 id., 82; 13 id., 489; 14 id., 88; 49 id., 98; 58 id., 538; Cronkhite v. Bothwell, 3 Wyo., 739; U. S. v. Trabing, id., 144; 17 O., 495; 3 Wyo., 325; 1 Cin., Sup. Ct., 401; 10 Cal., 298; 55 Conn., 31; 33 Mich., 173; Wolcott v. Bachman, 3 Wyo., 336; Wyo. L. & T. Co. v. Holliday, id., 386; Newmarks v. Marks, 28 Pac., 960; Wilson v. Lucas, 78 Tex., 292; 59 N. W., 372; 108 N. C., 514; 57 N. W., 928; 60 N. W., 320; 38 Ind., 13; 19 Pa. St., 235; 71 Cal., 223; 52 Minn., 51; 54 Minn., 32; 110 Ind., 203; 60 Ind., 154; 54 Cal., 588; 7 Mont., 12; 51 Ind., 396.

On the merits counsel cited, Powell v. Hornan, 6 S. W., 506; Kingbery v. Berry, 94 Ill., 518; Albert v. Tuohig, 53 N. W., 582; Coughlin v. Beard, 2 Pac., 737; Martin v. Miles, 58 N. W., 732; Hughes v. Holman, 32 Pac.,298.

POTTER, JUSTICE.

The defendant in error filed a motion to dismiss the proceedings in error. The case was heard upon such motion and the merits at the same time, with the understanding that if the motion should not be sustained, the case itself was under advisement by the court for final disposition.

The motion to dismiss states as grounds therefor, in substance:

First. That the brief of plaintiff in error does not contain a statement of the points and authorities relied on, as required by law and Rule 14 of this court.

Second. That the petition in error fails to distinctly set forth the errors complained of, or any errors cognizable by this court.

Third. That the certificate of the official stenographer does not allege and state that the bill of exceptions contains all the evidence in the cause, but that it appears thereby that other evidence not embraced in the bill was adduced upon the trial.

Respecting the first ground of the motion, the brief which is attacked presents certain propositions and authorities; but the contention seems to be that the same do not sustain the party filing the brief. If that is the case, the effect of the rule is misconceived. The rule is not violated merely because the points relied on, or the authorities cited, are inapplicable.

The petition in error assigns error in the findings and judgment of the court, charging the same to have been contrary to law and not sustained by sufficient evidence; also in the ruling of the court sustaining the objection to the introduction in evidence of the original ballots cast at the election (this being a contested election case). The

assignment in the last-named particular is not as pointedly made as might be desirable, but it is sufficiently intelligible to indicate the error intended to be charged. Regarding the third ground upon which the motion is based, the allegation that it appears by the certificate of the stenographer that evidence not contained in the bill of exceptions was given upon the trial is disproved by reference to the certificate itself. That certificate merely states that "the within is all the oral evidence taken by me in the above entitled case at the time of the trial, being a full and complete transcript thereof." This does not indicate that "the within" constituted the entire bill, neither does it show that there was any other evidence than that which was oral, and written out by the stenographer. The point, however, is not well taken for a broader reason. In this court the certificate of the stenographer furnishes no vitality to a bill of exceptions. It may have been persuasive upon counsel and the court in the matter of settling and allowing the bill, but it is otherwise unimportant so far as the verity of the bill is concerned. The law has required the bill to be otherwise signed and authenticated. The stenographer's certificate not being provided for by law as a part of the bill, may be and usually is entirely omitted therefrom; therefore if embodied in the bill, or record, at all, it is immaterial whether it states that the bill contains all the evidence given in the cause or not; that fact must be otherwise disclosed, either in the bill itself or in the certificate of the judge who allows and signs the same. The motion to dismiss must be overruled.

At the general election held in November, 1894, the parties to this cause were opposing candidates for the office of county and prosecuting attorney of Albany County. Plaintiff in error was the nominee of the Republican party, and defendant in error of the Democratic and People's parties. The name of the latter was printed twice upon the official ballot, once as the nominee of the Democratic party and once as the nominee of the People's

party.    This was improper under our system, and the stat-
utes of this State regulating the preparation of official bal-
lots.    This was decided in the recent case of Sawin v.
Pease (supra), 42 Pac., 750.    It was also held in that
case that where no objection in that respect was made,
and no application to the court, or judge, or otherwise, as
expressly authorized by law prior to the election to have
the mistake corrected, the party complaining must, after
the election, be held to have waived the irregularity.    The
law requires that the candidates and their agents shall have
an opportunity to inspect the ballots before they are sent
out, and that any mistake shall be corrected without delay,
and further, that upon application to the district court or
judge by any elector, the officials preparing the ballots
may be required to correct any error therein.    The
amended petition in this case alleged that after the speci-
men ballots were in the hands of the county clerk, the
plaintiff entered his protest against printing the name of
defendant twice upon the ballot, and that he complied with
the statute for the purpose of having the ballots corrected,
but that his request was refused, and his protest disre-
garded, and that plaintiff did not discover the fact that
the ballots were so finally printed in time to present the
error for correction to the district judge.    The plaintiff
produced M. N. Grant, who was the Republican nominee
for sheriff at said election, as a witness, who testified that
he insisted to the county clerk that the names of persons
who had been nominated both by the Democratic and Peo-
ple's parties should not be placed on the ballot twice; that
he informed him he did not believe it was right, that it
might deceive, and some of the voters might think they
were two different persons.    That the county clerk seemed
to agree with him, but he made no promise as to his future
action in the premises.    This conversation occurred before
the preparation of the ballots, at least that was the impres-
sion of the witness, the clerk having approached him upon
the subject, apparently seeking information or advice.
The witness also testified in response to inquiries made by

the court that he did not make any objection to the clerk after the ballots were printed.

C. E. Carpenter was a witness who represented one of the People's party candidates prior to the election; and, after the sample ballots had been prepared, but anterior to the printing of the official ballots, he interviewed the clerk and objected to the name of any candidate being placed on the ballot more than once. The county attorney was present during a part of that interview, and the witness left under the impression that each name was to be printed on the ballot but once, although he expected the clerk to act according to the county attorney's decision. Mr. Carpenter did not mention the plaintiff's name, and did not represent or act for him. He did not see the official ballot until the day of election. The plaintiff, about ten days before election, heard about the ballots, but did not see them until about four or five days later; he then attempted to see the district judge, but found him out of town; and about the same time absented himself from the city. He made at least no formal protest to the county clerk. It is clear that the conversations which the witnesses Grant and Carpenter had with the clerk occurred ten days or more prior to the election. No formal protest, or demand, for correction was presented. The testimony does not support the allegation that plaintiff was unavoidably prevented from making the proper application to enforce the correction of the error. In our opinion the evidence is not sufficient to authorize this court to disturb the findings and conclusions of the trial court in this regard.

Another point of contest was that by reason of defendant's name appearing upon the official ballot twice, four hundred and twenty-six electors voted twice consecutively for him, and that said votes were counted twice ; the ballots being prepared as follows :

" For County and Prosecuting Attorney.
            (vote for one')
Charles W. Bramel—Democrat.
Charles W. Bramel—People's Party.
William H. Fishback—Republican."

And the charge is, the voters aforesaid each marked a cross opposite the name of the defendant in both places. To maintain this allegation it was not attempted to be shown by the testimony of any witness that any ballots were in fact so marked, or that any, if so marked, were counted upon the same ballot as two votes, but entire reliance was evidently placed upon the result of a recount of the ballots. When we reflect that the 'charge in this particular embraced thirty-one of the thirty-four precincts in the county, it is impossible not to remark the conspicuous absence of such evidence. If the allegation was founded upon fact, there ought to have existed no difficulty in establishing the same, in a general way at least, in the first instance, and thus clearly impeach the correctness of the official returns and canvass. We are not prepared to hold that until some such evidence had been produced, the ballots themselves would be inadmissible, but the circumstance may very properly be considered, applying the rather inflexible rules governing the admission of the ballots in evidence. Again, if such a large number of votes had been counted twice, the result of the total vote for the office in question ought to have demonstrated that fact to some extent, as it would unquestionably have appeared that more votes were counted than were cast. The total vote for that office, however, in comparison with the vote for other offices, and the total number of ballots cast, was not shown. It was proposed to introduce the ballots actually cast, and have them recounted by the court, and the true result determined in that manner. What purported to be the ballot boxes, and packages containing the ballots, were brought into court. The custodian thereof was the county clerk, who was examined as a witness, as was also his predecessor, who first had them in charge, to establish their genuineness. The court rejected the offer of the ballots as evidence, sustaining an objection thereto made on the grounds that they had not been securely wrapped and forwarded to the county clerk as by law required ; had

not been kept by the county clerk as required by law ; and that the different packages said to contain the ballots had every appearance of having been tampered with, and had been exposed to the reach of unauthorized persons so as to afford a reasonable probability of their having been changed.  Plaintiff then stated that he desired to lay the foundation for their admission by further testimony, and offered to produce a certain person as a witness, and to prove by him that he examined the ballot boxes and ballots in question under the immediate view and order of the court on the day of trial, and that the ballots cast at said election were all in court, in the original boxes ; that they were transmitted to the county clerk from the different precincts ; that the ballots apparently had not been tampered with so far as he could ascertain by personal examination ; and that they were in the boxes strung on a cord or string according to law.   The court responded to this offer by saying :  " Go and prove that ; you can't go on and make such wholesale assertions when you know to the contrary."   Upon further objection, however, the introduction of further evidence was refused, the plaintiff offering but one other witness, a deputy clerk, by whom it was desired to show that he had not interfered with the ballots.   We can not regard the offer to show by one witness, alone, without any explanation as to the means of his knowledge respecting the ballots of all the precincts, their transmission to the county clerk, and other matters embraced in the offer, as of much consequence. So far as the appearance of the ballots was concerned, and the examination thereof by the proposed witness in the view and under the order of the court, knowledge of those matters was possessed by the court, and the impossibility of proving them was quite pertinently suggested in the reply of the court already quoted.   Had the plaintiff made further offers of testimony so as to show its materiality, and from which it would appear that the proposed ballots could be thoroughly and satisfactorily identified if the offer was made good, it would have been error to

refuse to admit it, for, unless the ballots then in court, or the packages containing them, furnished in themselves unmistakable evidence of having been disturbed, the party offering them should have been permitted to produce legal and complete evidence to show that they were genuine, if such a desire was expressed, and an offer to do so was made. The peremptory refusal to receive any further evidence upon the subject could in our judgment only be justified by such a condition of the ballots themselves as to reasonably convince the court that it would be without the range of possibilities to furnish any satisfactory proof that they had been so preserved as to render it reasonably certain they had not been molested, but were in fact the ballots and all the ballots actually cast and counted. It is difficult to determine from the record whether such was the case or not, although the impression we have obtained is that the condition of the ballots was no worse than showing that all the requirements of the law had not been complied with, and that a possibility existed thereby that they might have been interfered with. However, no proposal was made from which we can know or be informed whether the plaintiff was prepared to furnish any other material evidence sufficient to establish the authenticity of the ballots, such as to permit their admission in evidence. Therefore, the only question before us is whether there was prejudicial error such as this court can remedy in the refusal to admit the ballots in evidence upon the proof adduced. In the first place the boxes and packages were in the presence of the court ; whether their identity was proven satisfactorily or not is a question of fact, and like any other, the conclusion of the court thereon is not to be lightly disturbed. It must be clearly against the weight of the evidence at least before an appellate court will interfere.

The returns of the election officers, upon which the official canvass is based, constitute the primary and are *prima facie* evidence of the result of the election. To

establish their incorrectness the burden of affirmatively doing so rested upon the plaintiff who attacked them. To authorize the admission of the ballots for the purpose of impeaching the official returns, it is well settled law that it must be shown with a reasonable degree of certainty that the ballots offered are genuine. If they have been actually preserved intact and without molestation or interference they amount to the highest and best evidence, but the party tendering them as evidence must satisfactorily prove that they have been so cared for and zealously guarded as to avoid any reasonable probability that they may have been disturbed. The rule was announced as follows in a well and ably considered case in New York. "The statute requires the ballot boxes to be preserved undisturbed and inviolate, and it is incumbent upon the party offering the evidence to show that they had been so kept, not beyond a mere possibility of interference, but that they were intact to the satisfaction of the jury. The burden was upon the relator to satisfy the jury that the boxes remained inviolate. The returns are the primary evidence of the result of an election. * * * They may be impeached for fraud or mistake, but in attempting to remedy one evil, we should be cautious not to open the door to another and far greater evil. After the election it is known just how many votes are required to change the result; the ballots themselves can not be identified — they have no earmark. Everything depends upon keeping the ballot-boxes secure, and the difficulty of doing this for several months in the face of temptation and opportunity, requires that the utmost scrutiny and care should be exercised in receiving the evidence." And later on the court says: "If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but if not, they are not only the weakest but the most dangerous evidence." People ex rel. Dailey et al. v. Livingston, 79 N. Y., 279.

See, also, Coylan v. Beard, 65 Cal., 58; Coylan v. Beard, 67 Cal., 303; Newton v. Newell, 26 Minn., 529;

Blankenship v. Israel, 132 Ill., 514; Murphy v. Battle, 155 Ill., 182; Cooley's Const. Lim., p. 625; McCrary on Elections, p. 209; Malett v. Plumb, 60 Conn., 352; Hudson v. Soloman, 19 Kan., 177.

In Cooley's Const. Lim., the principle is thus stated:

"If, however, the ballots have not been kept as required by law, and surrounded by such securities as the law has prescribed with a view to their safe preservation as the best evidence of the election, it would seem that they should not be received in evidence at all, or, if received, that it should be left to the jury to determine, upon all the circumstances of the case, whether they constitute more reliable evidence than the inspector's certificate which is usually prepared immediately on the close of the election, and upon actual count of the ballots as then made by the officers whose duty it is to do so."

Our statute requires the judges of election, after reading the ballots, to string them upon a strong thread or twine in the order in which they have been read; and after all have been counted, to enclose and seal them with one of the poll-books, and affidavits of electors concerning the qualification of persons voting, ballots returned by voters as spoiled, and ballots not cast, and accounting for those posted as by law required, under cover directed to the county clerk; and the packet thus sealed is required to be conveyed by one of the judges or clerks, and delivered to the postmaster at the nearest post-office and registered within forty-eight hours after the closing of the polls. It has been held that a failure to comply with a statutory requirement that the ballot-box be sealed will not render them inadmissible as evidence on a recount where the court is satisfied upon legal evidence that they have not been tampered with or disturbed. Mallett v. Plumb, 60 Conn., 352. It would certainly be more satisfactory and convincing evidence of identity if all the statutory safeguards are observed. The object of such requirements as sealing is to render them more secure from unauthorized interference, and attach greater reliability to them as evi-

dence in case of necessity. Although they may be for-
warded to the clerk by registered mail, we would be
inclined to hold that the absence of the seal would not of
itself exclude the ballots, if, nevertheless, it should be
satisfactorily established by legal evidence that they had
remained inviolate. If not sealed, however, it is manifest
that much greater difficulty must be encountered in show-
ing that they are in the same condition as when cast, and
that a court would, necessarily be required to go deeper
into the facts and more in detail than otherwise would be
the case to arrive at a conclusion favorable to their
acceptance.

The clerk of the county is under obligation to carefully
preserve the ballots for six months, or longer, if a contest
is pending in which they may be required as evidence.
From the testimony of the clerk who first obtained control
of them it appears that the ballots, or the packages sup-
posed to contain them, came into his possession from time
to time within fifteen days after the election, not more
than those from four precincts were sent by mail, the
others were delivered in person by messengers. Some
came in ballot-boxes, others did not, but were afterwards
thrown in the boxes not always with regard to the precinct
from which they came. Two of the boxes were sealed,
the others were not ; two of the packages enclosing
ballots had sealing wax on, others were tied or fastened
with strings. The boxes which were brought in enclosing
ballots were all locked; they were then placed and con-
tinued to remain until the trial, as is also shown by the
succeeding clerk, in the public room of the office, outside
of the railing; in most instances, the key to each box
hanging by its side, and with which any one could unlock
and open it. The ballots were not handled by any one, to
the knowledge of either the county clerk to whom they
were first delivered or his successor, but neither of them
were able to say that they were in the same condition as
when received, but the impression was conveyed that they
believed them to be. It further appeared that others had

keys to the office, that the windows to the office were not kept locked, but it was possible to enter the room through them from the outside. There was a vault attached to the office in which the returns were preserved, but the boxes with the ballot packages were kept in the general office as already stated. The official stamps furnished to, and used by, the judges of election in indorsing an official ballot before handing the same to a voter, were in some instances in the boxes.

As has been indicated, the identity of the ballots was a question of fact; but as the case was tried to the court, and the judge was required to ultimately determine the facts, as well as all legal points respecting the admission of evidence, we observe no impropriety in the present case in refusing to receive the ballots in the first instance, if the proof was so unsatisfactory that if admitted he would have been compelled to disregard them entirely. The question then is, ought the court to have been satisfied upon the evidence that the ballots had been kept inviolate, and were undisturbed and genuine? Was that fact established with reasonable certainty, and, indeed, with such convincing clearness that an appellate court can conclude that the finding that they had not been so carefully preserved as to reasonably insure that they had not been tampered with, and their rejection on that ground, is clearly contrary to the great weight of the evidence? In this kind of case, under all the circumstances, with the opportunity the trial court had to observe the packages of ballots, the finding of that court ought not to be set aside unless the evidence overwhelmingly points to a contrary conclusion. In the case before us, that is not the effect of the evidence. It supports the ruling of the trial court. We are rather of the opinion that the fact that the boxes and packages therein were kept in the public part of the office, was not in itself of so much importance as to cast entire discredit upon the ballots, had the keys been separated from them, and kept in some secure place, unless it had been shown that the locks were of such an ordinary kind

as to be easily fitted with such keys as are commonly carried. It may be that no safer place was at the command of the official having them in charge, yet we are far from commending the preservation of the ballots in such a place. Neither does the fact that the opening in the top of the box was not sealed appear of paramount' consequence, as the used ballots are or should be strung upon a string, yet it must be admitted to have some weight in connection with all the other circumstances.

No proof was offered to show the care exercised in the preservation of the ballots before they were delivered to the county clerk. What was done with them in any precinct after being counted; what condition they were in when delivered at the post-office; where they were kept before delivery to the post-office or to the clerk, are facts which were pertinent, but no attempt was made by proof or offer of proof to illuminate the case with information respecting them. The ballots actually cast by legal voters at an election ought ultimately to determine the result, and the law has wisely ordained a method which, if sacredly carried out, will enable the result, in case of dispute, to be thus determined. It is unfortunate, if in any case there has been such a disregard of the requirements touching the security of ballots, that they have become tainted with suspicion, or that it is impossible to show that they have not been disturbed, and thus the privilege of appealing to them destroyed; and, perhaps, the very will of the people defeated, but the manifest danger which would lurk in any relaxation of the rule governing this class of evidence, demands its strict enforcement.

The plaintiff producing no further evidence, the defense offered none, whereupon judgment was rendered for the defendant. For the reasons indicated in this opinion, such judgment must be affirmed.

GROESBECK, C. J., and CONAWAY, J., concur.