## CAMERON v. STATE OF WYOMING

(No. 1442; March 15, 1928; 265 Pac. 25)

*Sullivan & Garnett,* for plaintiff in error.

142

*William O. Wilson,* Attorney General, and *James A. Greenwood,* Deputy Attorney General, for defendant in error.

*Sullivan & Garnett,* in reply.

RINER, Justice.

Plaintiff in error Cameron, and one Hazen, were charged in the District Court of Albany County, Wyoming, with the unlawful possession of intoxicating liquors, consisting of twelve quarts of Gordon gin, in violation of the statute—Chapter 117, Session Laws of Wyoming, 1921. Trial was had, and—a verdict of guilty having been rendered against the defendants mentioned—judgment was entered thereon by the court. The defendant Hazen has acquiesced in the judgment of conviction—the defendant Cameron bringing the cause here for review by proceeding in error.

It is contended first by the plaintiff in error that the record does not present sufficient evidence against him to support a verdict of guilty. It appears that under date of June 1, 1926, one E. M. Turner, the owner of certain real estate in Albany County, Wyoming, executed a deed to the property, in which instrument the defendants Hazen and Cameron aforesaid were named as the grantees. The deed contained the usual covenants, coupled with a statement that the lands transferred by it were not at that time occupied as a homestead or otherwise by Turner—he and his family then residing in the city of Laramie. The covenant of warranty therein ran against all "lawful claims and demands whatsoever, save and except as to the taxes for the year 1926, which taxes the grantees herein assume and agree to pay." At the same time and of even date therewith, there was issued by the owner of the property a lease of the real estate described in the deed above mentioned, which lease named the defendant Hazen alone as lessee. The lease recited that it was for the term of one year, extending from June 1, 1926, with the privilege of renewal yearly for not to exceed five years from its date. The deed above mentioned was placed in escrow in a local bank. The terms of the escrow agreement do not specifically appear in the record.

Upon the trial, the owner of the premises, Turner, testified, without objection, in substance, that at the time that

the deed was executed, the defendants Cameron and Hazen entered upon possession of the land; that under this deed and lease these parties entered upon the possession of the land described in the deed and known as the "Moonlight Ranch property;" that they still had possession; that he had never taken possession. On cross examination, he stated that the deed and lease were issued at the same time and "then they took possession." When asked by defendant's counsel, "Any possession that was taken was taken under the lease that you have mentioned—is that true?"—the witness answered: "Probably." Some $3,000 worth of improvements were put on the place during the period from June 2, 1926 to September 17th following. Part of the improvements consisted of a dance hall, to which were attached a barroom—where soft drinks were served, a kitchen and a porch. The owner of the premises in the course of his testimony stated, without objection, that he understood the improvements were put there by the parties holding these papers, although they had never told him. Plaintiff in error testified that he loaned Hazen $2,000 and had the deed placed in escrow, with the understanding that if Hazen did not pay him the money, he would take over the improvements and the property.

Hazen, when on the witness stand, after answering affirmatively the query whether he claimed the place under a lease from Turner, responded to the question, "And also hold by a deed in escrow in the bank with the right of possession?" thus: "Mr. Cameron and I was in on that. Mr. Cameron thought we had better take that in regards to protecting him." Cameron testified also that he was out at the place "quite often"—Hazen stating that Cameron came out two or three times a week—and there was testimony besides that Cameron had declared to another witness that he "went out every night to get the first crack at the money, and that he had been there practically every night while the business was running."

On or about September 17, 1926, officers with a search warrant, appeared on the premises and entered the front door of the dance hall. They saw the defendant Cameron, with another man, engaged in sweeping the dance hall floor. Their testimony was to the effect that thereupon Cameron immediately dropped his broom and rushed into the adjacent room known as the barroom, being closely followed by the officers; that this room was dark at first, but when the light was turned on, Cameron was observed standing behind the bar; that water had been turned on in the sink and an empty Gordon gin bottle was found lying close by. No liquor was found in the bottle or in the buildings.

A search of the premises resulted in finding a paper carton containing twelve bottles of Gordon gin in a hole in the ground some distance from the buildings and on the premises described in the deed and lease already mentioned. There was also found and taken out of a hole located in another direction from the building, some forty-eight gin bottles, which had the same shape and label as those in the carton. From these forty-eight bottles, mostly empty, sufficient liquid was drained off which appeared, upon analysis, to have a prohibited amount of alcohol by volume, and to be liquor known as gin. One of the officers also stated on the witness stand, that he counted 152 empty quart gin bottles on the place. Cameron testified that he had seen people on the premises with bottles of liquor, and Hazen's testimony was to the same effect, both saying also that quite a considerable number of people frequented the dance hall. Plaintiff in error further testified that while he was sweeping the hall, he went into the bar to get a drink of water, and first noticed the officers when they came into the barroom. He and his co-defendant Hazen denied all knowledge of the liquor found on the place—declaring that he went out there on an invitation to dinner. Asked to explain his sweeping the dance floor, Cameron said he did not know how he happened to be doing so, and that he had no interest in the hall other than loaning Hazen money.

The question principally argued by the briefs of both counsel for the plaintiff in error and the State, is whether plaintiff in error was jointly, with Hazen, in possession of the Moonlight Ranch property, and thereby in constructive possession with Hazen of the liquor found on the premises —it being conceded by plaintiff in error that where, in a case of this kind, defendant is shown to have the custody or right of possession of the place where the intoxicating liquors are found, that fact alone is usually held to make a *prima facie* case of constructive possession. It is insisted here that there is no evidence of possession or right of possession on the part of Cameron as to the premises wherein the liquor was found. It is said that this is so because the deed to the property was placed in escrow, and the lease, giving the right of possession, ran to Hazen alone.

As already stated, the terms of the escrow-agreement between the parties do not appear in the record. When the deed was offered in evidence, the escrow envelope accompanying it was also offered, but, upon objection of defendants, was excluded. Ordinarily, under an escrow arrangement, the legal title to the land to be conveyed remains in the grantor, but it has been held that the equitable title vests in the grantee. See Jarvis v. Chanslor etc. Co., 20 Ariz. 134, 177 Pac. 27; Fouts v. Foudray, 31 Okla. 221, 120 Pac. 960; 38 L. R. A. N. S. 251; Ann. Cas. 1913E 301; Neal v. Pickett, 280 S. W. (Tex.) 748, 750; Lynn v. McCoy, (Tex. Civ. App.) 200 S. W. 885. This seems to be also the usual rule in the case of an executory contract of sale of real estate. The possession and right of possession ordinarily, in each of these instances, attaches to and follows the legal title. It is also true, however, that the vendor may voluntarily put the purchaser into possession, or the contract of sale or escrow agreement may confer a right of possession either in express terms or by implication. Ordinarily, the purchaser is not entitled to possession until he has obtained his deed, or at least has fully complied with his part of the contract. It would appear to be the

law also, that where improvements on the premises are contemplated to be made by the vendee, and where the latter is to pay the taxes on the property, a right of possession in the vendee arises by implication. In First National Bank etc. v. Montana etc. Co., 59 Mont. 584, 197 Pac. 994, the court, after quoting from 39 Cyc. 1620 to the effect that unless a contract of sale provides otherwise, the right to possession remains in the vendor, remarks:

"The same authority, developing the subject declares: 'Where a contract of sale is silent on the question of possession, the vendor may put the purchaser in possession, or the right of possession may arise by a necessary implication from the language of the contract. The right of possession arising by implication is as effective as though expressly granted in the written instrument.' 39 Cyc. 1621. "Further, the same authority declares right of possession by implication arises—'where improvements are contemplated, where time is the essence of the contract, where the vendee is to pay taxes and interest with right of vendor to forfeit payments for default, and where right of re-entry for default is given.' "

In Quirk v. McDonnell, 195 Ill. App. 333, the abstract of the decision reads:

"An agreement to sell real estate wherein it is provided that vendor shall make certain repairs, and that vendee shall pay taxes and other assessments before conveyance, evidences an intention of the parties that vendee shall have possession of the premises before such conveyance."

See also Krakow v. Willie, 125 Wisc. 284, 103 N. W. 1121; Olson v. Minnesota & N. W. R. Co., 89 Minn. 280, 94 N. W. 871.

In the case at bar the vendor Turner evidently gave Hazen a definite agreement in the form of the written lease carrying with it the right of possession. However, the deed which ran to both plaintiff in error and Hazen, required both of them to pay the taxes upon the premises for the year 1926. Ordinarily, under our law (W. C. S. 1920, sec.

2840), the grantor would be the one to pay the taxes for the current year. This requirement, taken in conjunction with the testimony of Turner, that these parties, with his knowledge and acquiescence, had placed improvements upon the premises, would certainly seem to be some evidence tending to prove an agreement between all of the parties concerned in the transaction that both Cameron and Hazen were to have the right of possession of the property. Especially is this so when considered in the light of the fact that Cameron was found by the officers, at the time they made their search of the premises, in active conduct to put the premises in shape for its nightly business, and the further fact of his constant attendance at the premises. We think, under all the circumstances of the case, that there was sufficient evidence to go to the jury on the question of possession of the premises by both Cameron and Hazen, and that, the jury having found against them on the point, that determination should stand.

The deed above referred to was offered in evidence by the State and was, over objection by the defendants, received by the court. This is assigned as error and so argued in plaintiff in error's brief. We cannot agree with the contention of counsel that this instrument had no bearing upon the possession of the premises—the fact of possession being of such controlling importance in the case. The owner testified, without objection, that both Cameron and Hazen were in possession of the premises. They were both found there when the officers arrived. The deed itself disclosed an agreement on the part of both of them to pay the taxes for the current year. Where no special arrangement exists, the law would place that burden upon the grantor. As we have said, this was some evidence, under the authorities above cited, of an understanding between all of the parties, that the two defendants were to take possession of the premises immediately. When considered with the other testimony of the grantor that the defendants had placed improvements to the amount of $3,000 upon the premises without objec-

tion on his part, it is reasonably clear that the deed was properly received in evidence. Complaint is made that the deed was admitted alone, without the escrow envelope. The trouble with this contention is that the escrow envelope was shut out by the court upon the defendants' own objection, which they did not offer to withdraw. Neither did they request the court to receive it in evidence, after it appeared that the court had ruled that the deed should come in.

It is also insisted that the court erred in declining to give an instruction to the jury, telling them, in substance, that the warranty deed to the Moonlight Ranch property in evidence before them was ''no proof of the possession of any of the defendants of said Moonlight Ranch, for the reason that the evidence further shows that said warranty deed has never been delivered.'' We think this requested instruction went too far and was rightly refused by the trial court. Our foregoing discussion of the relation of the deed to the question of right of possession makes it unnecessary to elaborate the matter further. When taken with all the other facts shown in the record bearing on the question of possession, it was some proof of the right of possession being vested in both the defendants.

Something is said in the course of plaintiff in error's argument about the court failing to instruct in the case on the law of circumstantial evidence, and Gardner v. State, 27 Wyo. 316, 196 Pac. 750, 15 A. L. R. 1040, is cited. But no request for instructions along that line was presented to the trial court, and it will be remembered also that in the decision just mentioned, it was explicitly stated that a failure to so instruct must be found to have been prejudicial, and as a general rule there should be an exception properly presenting the question.

In conclusion it may be pointed out that the final certificate presented to the trial judge for his signature does not conform to the previous rulings of this court, as it does not state that the bill of exceptions contains all of the evidence. See Seng v. State, 20 Wyo. 222, 122 Pac. 631; Fishback v.

Bramel, 6 Wyo. 293, 44 Pac. 840; Howard v. Bowman, 3 Wyo. 311, 23 Pac. 68; Wyoming Loan & Trust Co. v. W. H. Holliday Co., 3 Wyo. 386, 24 Pac. 193; Chosen Friends etc. League v. Otterson, et al., 7 Wyo. 89, 50 Pac. 194.

We do not think, under the circumstances of this case, that a reversal of the judgment is required because of any of the points argued to obtain it, and, accordingly, the judgment is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.