Emil A. HEIN, Appellant
(Defendant below),

Darlene E. Hein et al. (Defendants below),

v.

Neil B. LEE et al., Appellees
(Plaintiffs below).

No. 4512.

Supreme Court of Wyoming.

May 10, 1976.

Rehearing Denied June 9, 1976.

Emil A. Hein pro se.

Travis W. Moffat of Meier, Gist & Moffat, Lander, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

THOMAS, Justice.

This litigation arose out of the operation of a sawmill by Emil A. Hein (hereafter referred to as the appellant) on property which he owns and which is situated approximately eleven miles west of the town of Dubois, Wyoming. The appellant's neighbors brought the action seeking injunctive relief with respect to the operation of the appellant's sawmill. The district judge, after viewing the premises while appellant was operating his sawmill,[1] and after receiving testimony and other evidence, entered a Judgment and Decree enjoining the appellant from the operation of his sawmill. The trial court permitted the appellant about seven and one-half months to complete commitments relating to the commercial use of the sawmill, and then required that it either be removed together with incidental accumulations or that it be completely housed and its use thereafter limited to the personal needs of the appellant.

In his appeal from this Judgment and Decree the appellant asserts seven issues for resolution by this Court. They are:

1. Whether a "Statement of Restrictive Covenants to Run With Land" dated September 28, 1966, is binding upon the appellant's land.

2. Whether a contemporaneous quitclaim deed from William A. Meckem to Johnson Cattle Company, Inc., from which Meckem bought the land in question, which was not delivered or recorded, was merely incidental to a security transaction and had inchoate legal efficacy prior to its delivery, or whether it had the effect of defeating the efficacy of the restrictive covenants of September 28, 1966.

3. Whether the decision of the trial court that the sawmill constituted an industrial use of the appellant's lots; constituted annoyance and a nuisance to the other owners of property in the subdivision; was contrary to the restrictive covenants; and violated the rights of the other owners as determined under common law was correct.

4. Whether the trial court's decision that the sawmill was a private nui-

---

1. Specifically, the record contains this comment by the court:
   "The record should show that this morning the Court met with counsel for both parties in Dubois and went out to the Riverview Park Subdivision and had a view of the premises. At that time in the course of that view, the defendants Emil Hein and his wife started up the sawmill and operated it for 15 or 20 minutes while the court was present there and upon the hill near the Anderson house."

sance in the nature of a nuisance per accidens was correct.

5. Whether the trial court erred in refusing to apply certain asserted amendments to the restrictive covenants of September 28, 1966.

6. Whether the appellant was entitled to a jury trial.

7. Whether there was error on the part of the trial court in denying to the appellant his right to make a living for his family, the right to free enterprise, the right to sell or trade, and other rights secured under the Constitutions of the United States and the State of Wyoming.

On September 28, 1966, Johnson Cattle Company, Inc., by warranty deed, conveyed to William A. Meckem a tract of land containing approximately 67.62 acres situated in the southeast quarter and the northeast quarter of Section 15, T. 42 N., R. 108 W., 6th P.M., in Fremont County, Wyoming. On November 2, 1966, William A. Meckem filed in the office of the County Clerk of Fremont County an approved plat of the Riverview Park Subdivision which shows the tract of land divided into 23 lots ranging in size from 1.6 acres to 6.7 acres. At the same time Meckem filed in the office of the County Clerk of Fremont County a *Statement of Restrictive Covenants to Run With Land*, which by legal description described the same land as that included in the plat of Riverview Park Subdivision. The Statement of Restrictive Covenants to Run With Land declared that each of the lots is to be known as a "residential lot" and restricted structures to not more than two detached single-family dwellings per lot. Paragraph five of the Statement of Restrictive Covenants to Run With Land provided as follows:

"5. No obnoxious or offensive trade or activity or illegal practice of any kind shall be carried on upon any residential lot or any part thereof or in any building or structure or any part thereof, nor shall any activity be carried on which is or may become an annoyance or nuisance to the occupants of the adjoining or remaining residential lots in said development."

Thereafter William A. Meckem sold all of the lots in Riverview Park Subdivision except for lots four, six, and seven. These sales occurred between November of 1966 and July of 1971. In April of 1968, there was prepared a document entitled Riverview Park Subdivision Amendment to Restrictive Covenants.[2] At that time the only owners of lots within Riverview Park Subdivision were William A. Meckem and his wife (to the extent of whatever interest she may have had), William D. Carter and Mary E. Carter, Peter M. Richards and Betty E. Richards, and Johnson Cattle Company, Inc., a corporation. The record discloses, however, that this document never was executed by Peter M. Richards and Betty E. Richards.

Paragraph three of this document, purporting to amend the restrictive covenants, reads as follows:

"3. The paragraph numbered 1 of the earlier restrictions is amended such that it shall continue to apply as written to each and every lot in the Johnson WindRiver Subdivision excepting only however those lots numbered 8, 9, 5, 6 and 7, which face the U. S. Highway and as to those lots numbered 8, 9, 5, 6 and 7, no use thereof may be made excepting uses which are permitted as to all other lots and parcels in the subdivision, and also any legal business or enterprise may be operated thereon for gain or profit provided such legal business does not constitute a health hazard or a public nuisance, or a private nuisance as against any other lot or parcel in the subdivi-

2. Despite some apparent discrepancies the parties seem to agree that this document was intended to relate to the Riverview Park Subdivision.

sion, and provided that the business premises shall at all times be kept in a neat, clean and orderly condition and manner, and provided further, in all events accumulative to all the other restrictions that no obnoxious, or loud or noisy, or offensive activities shall be carried on thereon or anything done thereon which may be or become an annoyance or nuisance to the neighborhood."

On December 28, 1971, a quitclaim deed from William A. Meckem and his wife to Johnson Cattle Company, Inc., describing the entire tract previously conveyed by Johnson Cattle Company, Inc., to Meckem was recorded in the office of the County Clerk in Fremont County. In December of 1971 the only lots in Riverview Park Subdivision still owned by William Meckem were lots four, six and seven. The quitclaim deed was executed on September 28, 1966. Burke Johnson, the President of Johnson Cattle Company, Inc., testified that he had first seen the original of the quitclaim deed in December of 1971 when it was given to him by William Meckem. He recorded it shortly after he received it. On January 15, 1972, Johnson Cattle Company, Inc., conveyed to the appellant and his wife lots four, six, and seven of Riverview Park Subdivision.

The defendant testified that his occupation was that of a sawmill operator. He said that his sawmill operation began in March of 1972, which was approximately two months after he purchased the lots in Riverview Park Subdivision. This statement was clarified to show that he started moving the sawmill in during March of 1972, and that in 1973 he began operating his sawmill about the first of March. He had net money for the nine months of operation of 1973 of $6,700. He operated the sawmill about 15 days out of each 30-day period, and, generally, that occurred between about 8:30 and 9:00 in the morning until somewhere between 4:30 and 6:00 in the evening.

Other persons who owned lots within the subdivision testified during the course of the trial about the appellant's sawmill operations. They described the usual debris associated with the operation of a sawmill including shavings, sawdust, slab piles, and machines and parts of machines on the premises. They testified about logs being brought to and stored upon the premises. They testified about the noise reaching to their property from the operation of the appellant's sawmill, and advised the court that they did not consent or agree to such operations.

On April 30, 1973, a letter was sent to the appellant from counsel for the appellees. The letter advised the appellant that the operation was in violation of the restrictive covenants for the subdivision, particularly paragraph 5, and set a 15-day period for the appellant to cease and desist the operation of the sawmill and remove the mill and machinery from his property. About one month earlier William Meckem had written a letter to the appellant at the request of other owners of lots within the subdivision. That letter advised the appellant that he was in violation of the covenants. Appellant's position in the trial of this case was that he had no actual knowledge of these restrictive covenants. In denying a Motion for Summary Judgment filed by the appellees the trial court ruled that the Statement of Restrictive Covenants to Run With Land was not properly acknowledged, and for that reason no constructive knowledge could be attributed to the appellant even though the instrument was recorded. Meckem testified that he had furnished copies of the restrictive covenants and the "amendment" to the appellant. Other owners of lots within the subdivision testified that in the instance of their respective purchases Meckem had given them copies of these documents. Meckem also testified that, after his letter advising the appellant of the violations of the covenants, the appellant requested additional copies of the covenants from him stating that he had lost or misplaced his own. The appellant asserted that Meckem had told him the operation of his sawmill was permissible, but Meckem's recollection of

that was that he understood the appellant was going to use the sawmill only to cut logs for his own house and Meckem told him he felt no one would object to that limited use of the sawmill.

The initial complaint in this action was filed on May 22, 1973, about one week after the expiration of the 15-day period referred to in the letter from counsel for the other lot owners to appellant. There followed a series of complaints which involved reliance by the other lot owners upon a violation of the restrictive covenants and common law nuisance. Initially only injunctive relief was sought, but by the subsequent amended complaints claims for damages were added. At the trial of the case, however, upon motion of the appellant, the court struck the monetary damages issue, included in the pretrial order as an issue in the case, and counsel for the other lot owners agreed to this. Appellant did demand a jury trial, but the record contains a letter to the court from appellant's counsel which advised the court that appellant was satisfied to leave the issue of the right of a jury trial to the court's discretion, and that if damages did not appear to be an issue they would be pleased and confident to try the case before the court as judge and fact finder.

Some of appellant's contentions can be disposed of expeditiously. His seventh issue is purely a rhetorical and argumentative comment. Obviously it would be erroneous for the trial court in the absence of legal justification to deny him his right to make a living for his family and his right to free enterprise and his right to sell or trade property without any reason therefor. In this instance, however, there was ample legal reason for the court to proceed as it did.

With respect to his claim of a right to a jury trial we would construe, as the district judge apparently did, counsel's letter as being a waiver of the earlier demand for a jury, particularly in view of the fact that any issue of monetary damages

was taken out of the case. In addition, we note that Rule 38(a), W.R.C.P., provides that, "Issues of law must be tried by the court, unless referred as hereinafter provided; and issues of fact arising in actions for the recovery of money only, or specific real or personal property, shall be tried by a jury unless a jury trial be waived, or a reference be ordered. All other issues of fact shall be tried by the court, subject to its power to order any issue to be tried by a jury, or referred." As this case went to trial it was not one for the recovery of money only, or specific real or personal property, and consequently, under the rule, there is no right to a jury trial. The adoption of this rule did not change the concept announced in the early case of *Lellman v. Mills*, 15 Wyo. 149, 87 P. 985 (1906), that cases which are purely equitable in character, as this one is,[3] are triable by the court, subject to its power to order any issue to be tried by a jury. The district court here properly proceeded to try the case without impaneling a jury. *Davidek v. Wyoming Investment Co.*, 77 Wyo. 141, 308 P.2d 941 (1957).

We note that our statement of the facts and our consideration of the following issues are premised upon the proposition that we look only to the evidence favorable to the prevailing party and the appropriate inferences to be drawn therefrom. Since 1935 this Court consistently has applied the precept:

> "* * * In this connection it must be borne in mind that the appellate court must assume that the evidence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. * * *" *Willis v. Willis*, 48 Wyo. 403, 429, 49 P.2d 670, 678 (1935).

See *Mader v. James*, Wyo., 546 P.2d 190, 192 (1976).

---

3. *Norris v. United Mineral Products*, 61 Wyo. 386, 158 P.2d 679 (1945).

We conclude that the record in this instance contains ample evidence to justify the findings and conclusions of the court in its Judgment and Decree as follows:

"6. The construction, maintenance and the operation of the sawmill by defendants Hein on Lots 6 and 7, and to the extent that Lot 4 has been used in connection therewith, has been and is being used unreasonably, as concerns the legititmate. (sic) interests of the plaintiffs. The same constitutes a private nuisance in the nature of a nuisance per accidens.

"7. Such use and nuisance materially and substantially lessens and destroys the use and enjoyment of the plaintiffs' premises in the subdivision as residential properties. It occasions irreparable harm and injury to the plaintiffs, which is continuous and reoccurring, and which is serious and material to certain of the plaintiffs. Substantial damage is occasioned to plaintiffs thereby, but the amount thereof is speculative, and not capable of exact ascertainment.

"8. The injury materially interfers (sic) with the ordinary comfort of human existence of plaintiff property owners in the subdivision, and interferes with and lessens the residential character and quietude of the subdivision.

"9. The plaintiffs are without adequate remedy at law. There is an equity due.

"10. The plaintiffs sawmill enterprise is an industrial use of their lots. It constitutes annoyance and a nuisance to the other owners of property in the subdivision. And it is contrary to the restrictive covenants. And it violates the rights of plaintiffs as determined under common law."

The finding of nuisance by the trial court which we hold to be correct, substantially disposes of all the issues in this case. The relief afforded by the district court is appropriate in the instance of a common law nuisance. We have adopted a definition of a nuisance as being "a class of wrongs which arises from an unreasonable, unwarranted, or unlawful use by a person of his own property, working an obstruction or injury to the right of another." *Lore v. Town of Douglas,* Wyo., 355 P.2d 367, 370 (1960). Absent a controlling statute or ordinance, and none appears here, it is within the province of the trial judge to balance equities and to decide whether an injunction should or should not issue with respect to an alleged nuisance. *Hillmer v. McConnell Brothers,* Wyo., 414 P.2d 972 (1966). Our examination of this record persuades us that the trial court properly applied the balancing test adopted by this court in *Schorck v. Epperson,* 74 Wyo. 286, 287 P.2d 467 (1955), in reaching its determination that an injunction should issue.

The record also demonstrates that the district court was aware of and applied the proper test which considers the effect which the operation of the sawmill would have on ordinary and reasonable persons, that is, on persons of ordinary health, normal or average sensibilities, and ordinary tastes and habits and mode of living. *Erickson v. Hudson,* 70 Wyo. 317, 249 P.2d 523 (1952). The trial court further was aware of and applied the distinction between those things which are considered to be a nuisance per se and those things which only are considered to be nuisances under the particular circumstances, conditions or locations. *Knight v. City of Riverton,* 71 Wyo. 459, 259 P.2d 748 (1953). The district court's conclusion that under the facts and circumstances shown by this record the operation of appellant's sawmill was a nuisance per accidens is consistent with similar cases from other jurisdictions,[4] and we hold that this decision is supported by the

4. *First Avenue Coal & Lumber Co. v. Johnston,* 171 Ala. 470, 54 So. 598 (1911); *Bailey v. Miller,* 233 Md. 138, 195 A.2d 601 (1963); *Krocker v. Westmoreland Planing Mill Co.,* 274 Pa. 143, 117 A. 669, 23 A.L.R. 1404 (1922); *Rogers v. John Week Lumber Co.,* 117 Wis. 5, 93 N.W. 821 (1903); *Stall v. Hillman,* 16 Ohio N.P., N.S. 410 (1914).

evidence of record and binding upon this Court. *Erickson v. Hudson,* supra.

The trial court's finding that the appellant's activities amounted to a nuisance in and of itself justifies the relief which the trial court granted. It does appear, however, that the trial court took cognizance of the restrictive covenants, which were executed by William Meckem, and the existence of those covenants may have influenced the trial court in the scope of the relief which was afforded the plaintiffs-appellees. The appellant contends that these covenants have no efficacy as to him. As we understand the thrust of his argument it is that because Meckem executed the quitclaim deed to Johnson Cattle Company, Inc., which was placed in escrow, contemporaneously with the receipt by Meckem of the warranty deed from Johnson Cattle Company, Inc., the subsequent recording of the quitclaim deed would relate back to the date of its execution and have the effect, as to the appellant, of demonstrating that Meckem did not own the Riverview Park Subdivision at the time the restrictive covenants were adopted. For this reason appellant asserts that the restrictive covenants had no efficacy as to his lots. In our judgment the appellant's contention is not sound nor is it supported by the authorities cited, primarily *Butman v. James,* 34 Minn. 547, 27 N.W. 66 (1886), which appellant asserts is a persuasive construction of § 34–27, W.S. The effect of § 34–27, W.S. need not be considered in this instance because the law requires delivery, as well as execution, of a deed, for it to be valid. *Butler v. McGee,* Wyo., 373 P.2d 595 (1962); and *Crozier v. Malone,* Wyo. 366 P.2d 125 (1966). This Court has noted in passing that legal title ordinarily remains in the grantor when a deed is placed in escrow. *Cameron v. State,* 38 Wyo. 140, 265 P. 25 (1928). The effect of placing the deed in escrow is to prevent its delivery until the terms of the escrow have been accomplished, and the revesting of legal title in Johnson Cattle Company, Inc., would date only from the time of delivery. E. g., *Provident Life & Trust Co. v. County of Mercer,* 170 U.S. 593, 18 S.Ct. 788, 42 L.Ed. 1156 (1898); *Hart v. Barron,* 122 Mont. 350, 204 P.2d 797 (1949); *Norman v. Wilson,* Tex.Civ. App., 41 S.W.2d 331 (1931); 28 Am.Jur. 2d *Escrow* § 10, p. 16 (1966). Recording of the quitclaim deed after delivery could not confer validity to the deed prior to its delivery.

Appellant also contends that the covenants were not lawfully imposed with respect to his properties. The trial court correctly held that they were binding upon the appellant's lands since it found, based upon the evidence in the record that the appellant had actual notice of these covenants. *Crozier v. Malone,* supra; and *Taylor v. Melton,* 130 Colo. 280, 274 P.2d 977 (1954). The record also demonstrates Meckem's intent to adopt a general scheme for development by imposition of the restrictive covenants. Neither the fact that they do not appear in his deed nor the fact that they were not properly placed on public record relieves the appellant of their burden because he had actual notice. *Grange v. Korff,* 248 Iowa 118, 79 N.W.2d 743 (1956); *Sanborn v. McLean,* 233 Mich. 227, 206 N.W. 496 (1925); *Hayes v. Gibbs,* 110 Utah 54, 169 P.2d 781, 168 A.L.R. 513 (1946); *Newbold v. Peabody Heights Co.,* 70 Md. 493, 17 A. 372 (1889).

The appellant, however, further contends that the amendment of the restrictive covenants justifies the use he has made of the property. The short answer to this contention is that the amendments upon which he relies never became effective because they were not executed by all of the owners of the property encumbered by the covenants. *Goulding v. Phinney,* 234 Mass. 411, 125 N.E. 703 (1920); *Lakeshore Estates Recreational Area, Inc. v. Turner,* Mo., 481 S.W.2d 572 (1972); *Nelson v. Flache,* Tex.Civ.App., 487 S.W.2d 843 (1972); *Genske v. Jensen,* 188 Wis. 17, 205 N.W. 548 (1925). Had the amendments been in fact adopted they would have been small comfort to appellant because

they exclude from the uses which might be permitted those which constitute a nuisance or cause effects such as those complained of in the trial court. The trial court's finding that appellant's activities did amount to a nuisance would govern with respect to the restrictive covenants and the amendment as well as the application of the common law concept of nuisance. All of the foregoing makes it unnecessary to even consider appellant's complaint that the court erred in describing his use as industrial rather than commercial, although this finding by the trial court also was justified. See, e. g., *Kubby v. Hammond,* 68 Ariz. 17, 198 P.2d 134 (1948); *Burritt v. City of Butte,* 161 Mont. 530, 508 P.2d 563 (1973); *Union Pacific Railroad Co. v. State Tax Commission,* 19 Utah 2d 92, 426 P.2d 231 (1967).

The judgment of the trial court is affirmed.