## SUN OIL COMPANY *v.* TRENT AUTO WASH, INC.

### Opinion of the Court.

1. Covenants—Equity—Real Property—Restrictions—Enforcement.

   Enforcement of a restrictive covenant on the use of land does not depend upon whether the covenant runs with the land, for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation than the party from whom he purchased.

2. Same—Equitable Servitude—Intention of the Parties.

   The sole test for the running of the burden of an equitable servitude on land is the intention of the parties to impose a servitude upon the land as distinguished from a personal promise of the present owner.

3. Same—Equitable Servitude—Intention of the Parties.

   Whether a restriction on the use of land was intended by the parties to bind their successors must rest upon an inference drawn from the circumstances under which the promise was made in cases where the promise does not by its terms purport to bind successors.

---

### References for Points in Headnotes

[1, 6, 7, 12] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 288 *et seq.*

[2, 3, 4] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 165 *et seq.*

[5, 6, 12] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 207.

[8, 10, 11, 15, 16] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 182.

[9] 20 Am Jur 2d, Costs § 87 *et seq.*

[13] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 207 *et seq.*

[14] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 29 *et seq.*

4. Same—Equitable Servitude—Words of Creation.

   Special words such as "and assigns" are not necessary in a deed which creates an equitable servitude on land, since the doctrine of equitable servitude rests upon the theory of a servitude imposed upon the land, which becomes enforceable against all subsequent purchasers of the land charged with notice, actual or constructive.

5. Same—Equitable Servitude—Intention of the Parties.

   Agreement between grantor and grantee, expressed in a deed, that property owned by the grantor lying north of and adjoining the property conveyed in the deed should not be used for, or in connection with, the operation of a gasoline service station or filling station, contained nothing personal to the grantor and clearly referred to the land.

6. Same—Equitable Servitude—Enforcement.

   Agreement by grantor in deed that property adjoining granted land should not be used for or in connection with the operation of a gasoline service station or filling station was not so ambiguous as to be incapable of enforcement against those who took with notice of it; the time during which the agreement is to be enforced not being expressed, a reasonable time for enforcement may be determined by a court in terms of the presumed intent of the parties.

7. Same—Equitable Servitude—Covenant Running With the Land.

   Determination that a covenant contained in a deed runs with the land is unnecessary to dispose of a case in which the covenant is enforceable as an equitable servitude on the land against one who took with notice of it.

8. Same—Criminal Law.

   Covenant in a deed to an oil company grantee, by which grantor agreed that adjacent lands owned by the grantor would not be used for or in connection with the operation of a gasoline service station or filling station, was not violative of a statute making it a criminal offense to make an agreement the object or intent of which is to prevent or restrict free competition in the production or sale of any article or commodity (CL 1948, § 750.151).

9. Costs—Remand—Equitable Servitude.

   Costs are ordered to abide the final result, where action to restrain defendant from violating alleged covenant with respect to use of property is remanded for purpose of hearing required in applying an equitable servitude.

DISSENTING OPINION.

DETHMERS, C. J., and SOURIS and O'HARA, JJ.

10. COVENANTS—RESTRICTIONS—CONSTRUCTION.

Covenants restricting the use of land and preventing its free and unrestricted enjoyment are not favored, and will be strictly construed against the restriction.

11. SAME—AMBIGUITY.

Uncertainties in an ambiguously worded covenant are resolved in favor of the free use of property.

12. SAME—RESTRICTIONS—GASOLINE SALES.

Covenant restricting property to prohibit sale and storage of gasoline and petroleum products on land retained by grantor when she sold 2 of 6 lots to plaintiff grantee held, personal to the grantor not to run with the land.

13. SAME—RESTRICTION—NOTICE—COVENANT RUNNING WITH THE LAND.

Notice to later purchaser of property from a common grantor of restrictive covenant as to use of such property, which had been imposed in favor of previous purchaser of adjoining land from the common grantor and contained in such earlier deed, did not, in suit to enforce such restriction by injunction against its violation, convert the restrictive covenant from one personal to the grantor to a covenant running with the land.

14. SAME — COMMON GRANTOR — RESTRICTION — COVENANT RUNNING WITH THE LAND.

Whether grantee's intended use of premises, retained by common grantor when latter had previously sold adjoining lots to plaintiff with a restriction upon land then retained by the grantor that it not be used for sale or storage of gasoline and petroleum products was violative of such restriction is not determined where the restrictive covenant is determined not to run with the land.

15. MONOPOLIES—RESTRAINT OF TRADE—RULE OF REASON.

Restraint of trade is prohibited only when it is unreasonable.

16. SAME—RESTRAINT OF TRADE—RESTRICTIVE COVENANT—GASOLINE SALES.

Restrictive covenant reserved by common grantor on defendant's 4 lots, adjacent to plaintiff's 2 lots used in connection with gasoline station, which prohibited storage and sale of gasoline and petroleum products on defendant's premises held, not an unreasonable restraint on trade.

Appeal from Court of Appeals, Division 2; T. G.
Kavanagh, P.J., Holbrook and McGregor, JJ., af-
firming Macomb, Noe (Alton H.), J.   Submitted
November 10, 1966.   (Calendar No. 10, Docket No.
51,441.)   Decided June 6, 1967.

2 Mich App 389, reversed.

Sun Oil Company, a New Jersey corporation, pre-
sented a complaint for injunction against Trent Auto
Wash, Inc., a Michigan corporation, to restrain de-
fendant from erecting gasoline storage and dispens-
ing equipment in derogation of an alleged restrictive
covenant on defendant's property.   Judgment for
plaintiff.   Judgment affirmed by Court of Appeals.
Defendant appeals.   Reversed and remanded for
further hearing.

*Robert E. Childs,* for plaintiff.

*Anthony A. Vermeulen,* for defendant.

ADAMS, J.   On September 28, 1962, Clara Williams
gave a warranty deed to Sun Oil Company by which
she conveyed to that company two lots.   Contained
in her deed is the following agreement:

"Grantor agrees *that property* now owned by
grantor lying north of and adjacent to the within
described premises *shall not be used* for or in con-
nection with the operation of a gasoline service
station or filling station for the sale of gasoline,
motor fuel, petroleum products, automotive acces-
sories or automotive services generally." (Empha-
sis added.)

On February 1, 1964, Clara Williams executed
a land contract to defendant, Trent Auto Wash,

Inc. It is admitted that the land contract covered "that property now owned by grantor lying north of and adjacent to" the lots Clara Williams conveyed to Sun Oil Company. The defendant also "admits that it had knowledge of the alleged covenant; that plaintiff's agents informed it that plaintiff would attempt to enforce said covenant, and that defendant intends to construct underground storage tanks and above ground pumps," et cetera.

It is unnecessary to determine whether the above agreement is a covenant running with the land to afford plaintiff the relief it seeks. The agreement relates to the property purchased by Trent Auto Wash and it is equally clear that it was intended for the benefit of the adjacent property of Sun Oil Company. The agreement does not relate to any activities on the part of Clara Williams, but, rather, contemplates a restriction upon the use of property retained by her. Whatever she could not do, chancery may also enjoin those in privity with her and with notice of the restriction from doing.

The principle is stated by the Lord Chancellor in the case of *Tulk* v. *Moxhay* (1848), 2 Ph 774 (41 Eng Rep 1143), affirming 11 Beav 571 (50 Eng Rep 937):

"The question does not depend upon whether the covenant runs with the land * * * if there was a mere agreement and no covenant, this court would enforce it against the party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased."

The principle of *Tulk* has been widely recognized and followed in numerous cases. In the case of *Langenback* v. *Mays* (1950), 207 Ga 156 (60 SE2d 240), the defendants sold to plaintiffs a small tract of land on which several tourist cabins were located,

and orally agreed not to use their remaining land for a tourist camp. The defendants constructed a tourist camp in violation of their contract and, when enjoined from operating it, executed an instrument purporting to be a lease to their daughter for the tourist camp. The daughter operated the business with actual knowledge of the injunction granted against her parents. The supreme court of Georgia's opinion states:

"Equity will enforce a lawful restrictive agreement concerning land against a person who takes with notice of the contract. In such a case, the person violating the agreement, though not a party to it, is a privy in conscience with the maker. 31 Yale Law Jour 127, 131; *Francisco* v. *Smith,* 143 NY 488 (38 NE 980); *Rosen* v. *Wolff,* 152 Ga 578 (110 SE 877)."

In the case of *Thodos* v. *Shirk* (1956), 248 Iowa 172 (79 NW2d 733), plaintiff, owner of certain lots in a subdivision, brought an action in equity asking that defendants be enjoined from using their property as a trailer court in violation of the restrictive covenant in their deed which provided: "No building shall be placed or erected on said premises except for residence purposes." The court in discussing the doctrine of equitable servitudes said (p 179):

"Since the doctrine of equitable servitudes rests upon the theory of a servitude imposed upon the land, enforceable against all subsequent purchasers of the land who are charged with notice actual or constructive, the requirement of the special words such as 'and assigns' is unnecessary in the deed. The sole test for the running of the burden in equity is the intention of the parties to impose a servitude upon the land as distinguished from a personal promise of the present owner."

In *Hodge* v. *Sloan* (1887), 107 NY 244 (17 NE 335), a grantee bound himself by a covenant in his deed to limit the use of land purchased so as not to interfere with the trade or business of the grantor and the property was subsequently sold to defendant without covenant on his part but with notice of the covenant in the deed to his grantor. The court said (p 250):

"There seems no reason why he and his grantee, taking title with notice of the restriction, should not be equally bound. The contract was good between the original parties, and it should in equity at least bind whoever takes title with notice of such covenant. By reason of it the vendor received less for his land, and the plain and expressed intention of the parties would be defeated if the covenant could not be enforced as well against a purchaser with notice, as against the original covenantor. In order to uphold the liability of the successor in title, it is not necessary that the covenant should be one technically attaching to and concerning the land and so running with the title. It is enough that a purchaser has notice of it."

In the case of *Coomes* v. *Aero Theatre and Shopping Center, Inc.* (1955), 207 Md 432 (114 A2d 631), the complainant and his grantee intended that land should be restricted to uses not in conflict with the use of complainant's remaining land. The restrictive covenant read:

"Subject also the further restriction that the grantees or their tenants therein will not engage in any business which shall compete with or be of a similar nature of those businesses conducted and maintained on the property known as the Aero Theatre and Shopping Center, Inc."

Defendants, who took from plaintiff's grantee, had notice of the restriction at time of conveyance. The

restriction was held binding on them.   The court
said (p 437):

"We reaffirm the doctrine [the doctrine of *Tulk*]
that if the owner of land enters into a covenant
concerning its use, subjecting it to an easement or
personal servitude, and the land is afterwards con-
veyed to one who has notice of the covenant, the
grantee will take the land bound by the covenant
and will be compelled in equity to specifically exe-
cute it or will be restrained from violating it; and
it makes no difference, with respect to this liability
in equity, whether or not the covenant is one which
runs with the land.   *Thruston* v. *Minke,* 32 Md 487,
494; *Halle* v. *Newbold,* 69 Md 265, 270 (14 A 662);
*Newbold* v. *Peabody Heights Co.,* 70 Md 493 (17 A
372, 3 LRA 579); *Peabody Heights Co. of Baltimore
City* v. *Willson,* 82 Md 186 (32 A 386, 1077, 36 LRA
393); *Clem* v. *Valentine,* 155 Md 19 (141 A 710);
*Turner* v. *Brocato,* 206 Md 336 (111 A 2d 855); 2
Pomeroy, Equity Jurisprudence (5th ed), § 689. * * *

"While most courts have accepted the theory that
restrictive agreements should be enforced as an
easement or servitude, Mr. Tiffany took the view
that the more satisfactory theory is that equity re-
gards such an agreement as vesting in the promisee
a right to specific enforcement by means of an in-
junction or otherwise, not only as against the orig-
inal promisor, but also as against a subsequent hold-
er of the property, if not a purchaser for value
without notice.   He argued that if the right to
equitable relief could not thus be asserted as against
a subsequent holder of the property, the result would
be that the promisee could be deprived of such
right, in practically every case, by a collusive trans-
fer on the part of the promisor.   3 Tiffany, Real
Property (3d Ed), § 861. * * *

"It is understood, however, that it is not necessary
that the expression of intention shall take any parti-
cular form.   Of course, if the promise purports to
bind successors by the use of such words as 'suc-

cessors' or 'assigns', little question can arise as to the existence of the necessary intention. But as the language employed becomes less plain and precise, the conclusion that the successors were intended to be bound must rest in a correspondingly greater degree upon an inference drawn from the circumstances under which the promise was made. The circumstances of a particular transaction may yield such an inference without the aid of any specific language in the terms of the promise."

For further annotated statements of the equitable doctrine, see Pomeroy's Equity Jurisprudence (5th ed), §§ 689 and 1295; Tiffany, Real Property (3d ed), § 859; Thompson on Real Property (1962 Replacement), § 3170; 20 Am Jur 2d, Covenants, Conditions, and Restrictions, § 26; 23 ALR2d p 520 *et seq.*

The agreement between Clara Williams and Sun Oil Company is not so ambiguous as to be incapable of enforcement against those who have taken with notice of it. The commitment is that "that property * * * shall not be used for or in connection with the operation of a gasoline service station." There is nothing personal as to Mrs. Williams in this language. It clearly refers to the land. While the time of the commitment is not expressed, this is no insuperable obstacle. Courts are quite accustomed to making determinations of what is a reasonable time in terms of the presumed intent of the parties. Finally, if the agreement is not enforced by equity, it becomes completely vitiated. Obviously, plaintiff has no adequate remedy at law. If equity cannot grant relief, a covenantor need only convey the land to destroy today the covenant he made yesterday—or, as in Mrs. Williams' case, the covenant made by her a short 16 months before her conveyance to defendant.

Both the trial judge and the Court of Appeals disposed of this matter by holding that the covenant or agreement of the parties ran with the land, a determination I do not regard as necessary for disposition of this case. The chancellor also recognized the equitable doctrine as being applicable if the covenant did not run with the land. I would remand to him for such hearing as may be required to apply that doctrine. Determination of possible questions such as a change in circumstances relating to the lands in question may be necessary. Other aspects of the transaction not presently before us may bear upon the equities of the parties. This is a traditional equity action which does not lend itself to summary disposition. Upon the conclusion of a full hearing, the chancellor will be in a position to shape a proper decree.

I agree that the covenant does not violate CL 1948, § 750.151 (Stat Ann 1962 Rev § 28.348).

I would remand, with costs to abide final result.

Kelly, Black, and T. M. Kavanagh, JJ., concurred with Adams, J.

O'Hara, J. (*dissenting*). Two questions are presented by this appeal on our leave granted from the Court of Appeals (2 Mich App 389). The first is whether the restrictive covenant here involved is personal and limited in its application to the grantor who executed it, or whether it is a covenant running with the land and binding upon subsequent purchasers. The second is what is the effect, if any, of the covenant upon a purchaser who takes with notice thereof. The relevant facts are as follows:

Appellant Sun Oil Company bought 3 lots in a desirable location in St. Clair Shores. It built and equipped a filling station upon them and leased out its operation. In the fractional plat there was

a total of 9 lots. The 6 remaining after Sun's purchase were owned by a Clara Williams. They were adjacent to and north of the 3 Sun had previously purchased. Thereafter Sun Oil bought 2 of those lots as a protective measure against the erection of competitive filling stations upon any of the remaining 4. To this end it required that its grantor, Mrs. Williams, include in the warranty deed conveying the 2 lots the following reservation:

"Grantor agrees that property now owned by grantor lying north of and adjacent to the within described premises shall not be used for or in connection with the operation of a gasoline service station or filling station for the sale of gasoline, motor fuel."

It is stipulated that the remaining lots constitute "the property" which is the subject of this litigation.

Subsequent to this conveyance, appellee Trent purchased the 4 lots on land contract. Prior to the purchase, its attorney examined the reservation affecting the 4 lots and Trent was advised by counsel for Sun that Sun would seek to enforce it.

The case was tried in the circuit court on a stipulated record. No fact questions are involved. The trial judge found the restrictive covenant to be a covenant running with the land and hence binding upon the subsequent purchaser. The court added in its opinion:

"Even if this be considered under defendant's theory to be a personal covenant, defendant having admittedly taken title with knowledge of its existence, then equity will enforce its observance by enjoining defendant's violation of said covenant for defendant is 'privy in conscience with the maker of restrictive agreement.'"

The Court of Appeals affirmed. Its rationale was that the restriction was not clear and unambiguous. Therefore, that case precedent holding that such restrictions cannot be extended beyond the plain meaning of the words used in them did not control. From this premise the court proceeded to a determination of "the nature of the subject matter, and the apparent purpose in making the agreement," citing *Moore* v. *Kimball* (1959), 291 Mich 455, 461. Thereupon, the court found that purpose "patently is the limitation of competition on this land." In expanding its opinion, our able intermediate Associates used the following language:

"We acknowledge that our decision is not in accord with the case of *Lowe* v. *Wilson* (1952), 194 Tenn 267 (250 SW2d 366) or the authorities cited therein for we are not persuaded *that blind adherence to such a technical rule is required by or desirable* (in our view) *for the jurisprudence of Michigan.*" (Emphasis this Court's.)

In its conclusionary paragraph the court adds:

"Finally we mention that our view is not in accord with that expressed in 5 Restatement of Property, § 537. We do not share the concern there expressed in the comment (f) on that section (p 3221) anent the social harm involved."

We are compelled to disagree. First, we do not believe that to hold with appellant we adhere blindly to a technical rule. Rather, we believe we follow wise precedent efficacious as applied to transactions involving the transfer of and limitations upon the use of real property. We might well agree that the apparent purpose of appellee Sun in phrasing the restriction was to limit competition on the lots not owned by it and contiguous to those which it purchased from grantor Williams. Such unilateral in-

tention on its part, however, in our view is not suffi-
cient to establish that such was the intention of the
grantor and binding upon subsequent grantees.   If
Sun intended the restriction to be a covenant run-
ning with the land, it was Sun's obligation to phrase
the restriction or to insist upon phrasing that would
create no ambiguity at the peril of having any am-
biguity resolved in favor of the free use of land.
To follow the Court of Appeals, we would do vio-
lence to the rule enunciated in *Bastendorf* v. *Arndt*,
290 Mich 423, 426 (124 ALR 445):

"Where restrictions are ambiguous, it is axiomatic
that uncertainties are resolved in favor of the free
use of property. *Kelly* v. *Carpenter*, 245 Mich 406;
*Phillips* v. *Lawler*, 259 Mich 567."

We agree with the Court of Appeals that the
restrictions "might be read as an undertaking on
the part of the covenantor that the property would
*never* be used or it might be read as an undertaking
that it would not be used so long as the grantor
had title."   (Emphasis added by the Court of Ap-
peals.)   To read "never" into the restriction here
involved is to resolve the ambiguity against the
free use of property and is to abrogate the salutary
rule of *Bastendorf* to the exact contrary.   We follow
the established rule.

Next we consider the language of the learned
chancellor that even if the covenant be interpreted
as a personal covenant, appellant having taken with
notice equity will enforce its observance.   We have
no quarrel with the statement of principle.   We
believe, however, it contains an omission that would
render its application inequitable rather than equi-
table.   The omission is the answer to the question
"notice of what?"   It is stipulated that appellee had
notice that a restriction had been included in the
deed from Mrs. Williams to Sun and made appli-

cable to the lots not conveyed which she retained.
Even the plenary power of equity cannot decree the
effect of notice to be greater than that which the
thing noticed creates. A purchaser with notice of
the restriction, as was appellee Trent, is as the
chancellor held "privy in conscience with the maker
of [the] restrictive agreement." Equity would have
no great problem in knowing what the "conscience"
of Sun was. It wanted to keep filling stations off
4 lots that it did not buy that were contiguous to
2 lots it did buy, all owned by the same person.
We cannot, however, span the wide gap from Sun's
"conscience" to Mrs. Williams' "conscience" on the
language of the deed. In examining the conveyance
of the 2 lots from Mrs. Williams to Sun, counsel
for Trent had a right to conclude that the restric-
tion was personal to the grantor under well-settled
law, and that when the lots passed to Trent the
restriction no longer applied. Trent could well have
been "privy in conscience" to Mrs. Williams and
still be free to use the 4 lots it purchased as it
chose. Having held the covenant personal and not
binding on appellant Trent, we do not reach or pass
upon its contention that if it were valid, the in-
tended use was not in fact violative of the language
of the restriction.

Appellant Trent further urges that if the restric-
tion does run with the land and thus is binding
upon it, the limitation is in restraint of trade and
violative of the applicable State statute.* Strictly

---

* CL 1948, § 750.151 (Stat Ann 1962 Rev § 28.348), which reads:
"All contracts, agreements, understandings and combinations made,
entered into, or knowingly assented to, by and between any parties
capable of making a contract or agreement which would be valid
at law or in equity, the purpose or object or intent of which shall
be to limit, control, or in any manner to restrict or regulate the
amount of production or the quantity of any article or commodity
to be raised, or produced by mining, manufacture, agriculture or
any other branch of business or labor, or to enhance, control or
regulate the market price thereof, or in any manner to prevent or
restrict free competition in the production or sale of any such article

speaking, for decisional purpose in this Court, we need not pass upon it. However, because the Court of Appeals held the restriction binding on Trent, it had to pass upon this issue. It is important to the jurisprudence of our State and likelihood exists that the question will arise. For this reason we here approve the position of the Court of Appeals and for the reasons assigned.

The judgment of the Court of Appeals affirming the circuit court is reversed. The cause should be remanded to the circuit court with directions to vacate its judgment, to dissolve the permanent injunction, and to enter judgment for defendant-appellant Trent Auto Wash, Inc. Appellant may tax costs of all courts.

DETHMERS, C. J., and SOURIS, J., concurred with O'HARA, J.

BRENNAN, J., did not participate in the decision of this case.

---

or commodity, shall be illegal and void, and every such contract, agreement, understanding and combination shall constitute a criminal conspiracy. And every person who, for himself personally, or as a member, or in the name of a partnership, or as a member, agent or officer of a corporation, or of any association for business purposes of any kind, who shall enter into or knowingly consent to any such void and illegal contract, agreement, understanding or combination, shall be deemed a party to such conspiracy.

"All parties so offending shall be guilty of a misdemeanor, punishable by imprisonment in the county jail for not more than 6 months or by a fine of not more than $250. And the prosecution for offenses under this section may be instituted and the trial had in any county where any of the conspirators become parties to such conspiracy, or in which any one of the conspirators shall reside: Provided, however, That this section shall in no manner invalidate or affect contracts for what is known and recognized as common law and in equity as contracts for the 'good will of a trade or business'; but all such contracts shall be left to stand upon the same terms and within the same limitations recognized at common law and in equity."