Susan STREETS, an individual; and James Keiderling, an individual, Appellants (Defendants),

v.

J M LAND & DEVELOPING CO., a Wyoming corporation, Appellee (Plaintiff).

No. 94-44.

Supreme Court of Wyoming.

June 28, 1995.

Paul J. Drew of Drew & Carlson, Gillette, for appellants.

Carol Seeger of Maycock Law Office, P.C., Gillette, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR, and LEHMAN, JJ.

THOMAS, Justice.

The only issue in this case is: Can a purchaser of land under a contract for deed impose restrictive covenants on that land which can be enforced against subsequent purchasers with notice? The trial court adopted the contract theory of enforcement of restrictive covenants in equity, and it entered an injunction against Susan Streets (Streets) and James Keiderling (Keiderling) to enforce certain provisions of restrictive covenants imposed on a tract of land by J M Land & Developing Co. (J M) by recordation in the office of the Campbell County Clerk. J M was a purchaser under a contract for deed at the time the restrictive covenants were recorded. Streets and Keiderling contended restrictive covenants could only be imposed by the owner of the legal title, and covenants recorded by the owner of an equitable title are invalid. We hold the restrictive covenants recorded by J M are enforceable as equitable servitudes against Streets, a purchaser with notice of the covenants, and Keiderling, her tenant. We affirm the Order for Permanent Injunction entered by the district court.

Streets and Keiderling, in the Brief of Appellants, state the issue to be:

I. Can an installment land sale purchaser who holds no legal title to the land burden that land with restrictive covenants.

J M, in its Brief of Appellee, restates the issue in this way:

Whether the District Court erred in finding that the restrictive covenants filed of record on December 12, 1978, are binding and enforceable against the appellants.

The facts in this case are not in dispute. On May 24, 1977, Ruby Ranch Investments (Ruby Ranch), a partnership formed by Max and Jesse Ruby, purchased 4,708 acres of land from Lowery Land and Livestock Trust (Lowery) by a contract for deed. Notice of the contract for deed was recorded in the office of the Campbell County Clerk on June 3, 1977. On August 24, 1978, J M, a corporation of which Jesse Ruby was president, purchased the same tract of land from Ruby Ranch Investments also by a contract for deed. Notice of this second contract for deed was recorded on December 12, 1978.

In the meantime, J M executed a document entitled Restrictive Covenants on August 29, 1978. The Restrictive Covenants recognized that J M was the equitable owner of the 4,708 acres and was dividing the land into forty-acre parcels. The Restrictive Covenants stated that J M "makes the following declaration as to limitations, restrictions, and uses to which the said subdivision may be put, hereby specifying that said declarations shall constitute covenants to run with all of the land above described, as provided by law, and shall be binding upon all parties and all persons claiming under them, and for the benefit of and limitation of all future owners in said lands, or present owners consenting thereto by their signatures being affixed thereto." The Restrictive Covenants were recorded in the office of the Campbell County Clerk on December 12, 1978, the same day that the second contract for deed was recorded.

J M did not have legal title at the time the Restrictive Covenants were recorded. On May 24, 1977, Lowery executed a warranty deed to Ruby Ranch, but that deed was not recorded until January 3, 1983. During the intervening period of time, J M sold a number of the subdivided forty-acre tracts to various purchasers. J M never did receive legal title to all 4,708 acres from Ruby Ranch Investments. At the time the complaint in this case was filed, J M did have legal title to approximately 430 acres.

Streets owns a tract of land, consisting of about twenty-two acres, within the 4,708 acres. Twenty acres of land were acquired by Streets by a quitclaim deed from the Federal Deposit Insurance Corporation dated September 21, 1988 and recorded September 27, 1988. The additional two acres Streets obtained by a special warranty deed from the Secretary of Housing and Urban Development, which was dated October 5, 1992 and recorded on October 8, 1992. Legal title to the forty-acre parcel that included the land owned by Streets was received by J M pursuant to a warranty deed dated October 8, 1984 and recorded March 20, 1985. Keiderling owns no interest in the property, but he resides on the property owned by Streets.

J M commenced this action by a complaint, filed September 17, 1992, naming Streets and Keiderling as defendants and alleging violations of provisions of the Restrictive Covenants. The particular covenants relied upon state:

4. Any livestock, poultry or other animals shall be kept in an area which shall be adequately fenced to keep the same within the owner's area * * *.

*　　*　　*　　*　　*　　*

7. All existing roads shall remain for the use of the public, and auto gates shall be supplied at the expense of the lot owner desiring to build a fence across such existing road.

J M sought injunctive relief to prohibit Streets and Keiderling from allowing stock to migrate onto J M's property and from blocking a roadway running across Streets' property. The trial court granted a permanent injunction to J M, contingent upon J M obtaining ratification and recordation of the Restrictive Covenants by Ruby Ranch. J M did obtain and record that ratification, and the permanent injunction was entered on

January 4, 1994. Streets and Keiderling appeal from that order.

■ The essence of Streets' position is that the twenty-two acres cannot be burdened at law by restrictive covenants recorded by J M in 1978. At the time the Restrictive Covenants were recorded, J M, the purchaser under a contract for deed, acquired only an equitable title, the legal title still being held by Lowery. J M could not impose restrictive covenants that would run with the land. *See* cases cited in 20 AM. JUR.2D *Covenants, Conditions, and Restrictions* § 33, 604 (1965). Streets' and Keiderling's position, however, begs the question resolved by the district court, and we deal in this decision with that issue. We decide for Wyoming that a restrictive covenant imposed by the equitable owner of land can be enforced in an equitable action against a purchaser of land chargeable with notice of the restrictive covenant.

Many of our sister jurisdictions have recognized the distinction between the legal concept of covenants that run with the land and the enforcement in courts of equity of equitable servitudes. *See* Maurice T. Brunner, Annotation, *Who May Enforce Restrictive Covenant or Agreement as to Use of Real Property,* 51 A.L.R.3d 556 (1973). In deciding to enforce the Restrictive Covenants, the trial court quoted this proposition from 20 AM. JUR.2D *Covenants, Conditions, and Restrictions* § 304, 868 (1965):

The general view is that a restrictive covenant is not strictly an easement and does not run with the land in the true sense of that term. **Such agreements are, however, enforceable in equity against all those who take the estate with notice of them, although they may not be, strictly speaking, real covenants so as to run with the land or of a nature to create a technical qualification of the title conveyed by the deed. The question is not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent with the contract entered into by his vendor, and with notice of which he purchased.** It has been noted that the enforcement of restrictive covenants or equitable servitudes is based on the equitable principle of notice; that is, a person taking title to land with notice of a restriction upon it will not, in equity and good conscience, be permitted to violate such restriction. (Footnotes omitted, emphasis added.)

The distinction between equitable servitudes and covenants which are said to run with the land is made more pointed by language that immediately follows that quoted by the trial court:

Accordingly, whether such a covenant runs with the land is material only in equity on the question of notice; if the covenant runs with the land, it binds the owner whether or not he had knowledge of it, **whereas if it does not run with the land, the owner is bound only if he has taken the land with notice of it.** Thus, since ordinarily such a covenant does not run with the land and since it is not a true easement, it is enforceable against a purchaser or assignee of the property only if he takes with notice. One who purchases for value and without notice takes the land free from the restrictive covenant. (Footnotes omitted, emphasis added.)

20 AM.JUR.2D *Covenants, Conditions, and Restrictions* § 304, 868 (1965).

Enforcement of covenants restricting the use of land in equity was recognized in the common law of England after the middle of the Nineteenth Century. In *Sun Oil Co. v. Trent Auto Wash, Inc.,* 379 Mich. 182, 150 N.W.2d 818, 820 (1967), the Michigan court said:

The principle is stated by the Lord Chancellor in the case of *Tulk v. Moxhay* (1948), 2 Ph 774 (41 Eng Rep 1143), affirming 11 Beav 571 (50 Eng Rep 937):

" * * * the question does not depend upon whether the covenant runs with the land * * * **if there was a mere agreement and no covenant, this Court would enforce it against the party purchasing with notice of it;** for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from

whom he purchased." (Emphasis added.)

*See also Thodos v. Shirk,* 248 Iowa 172, 79 N.W.2d 733 (1956).

The Restrictive Covenants imposed by J M did not result in easements that would run with the land, but they constituted contractual rights which, as demonstrated by the extant authorities, can be enforced in equity. This contract theory of restrictive covenants is articulated in this way in 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* § 167, 726:

> [T]he view has been taken that such covenants do not create true easements, but merely contractual rights. Moreover, it has been said that the restriction arising from a restrictive covenant is not an estate in land, as is a legal easement, but is purely a creature of equity arising out of contract, and that restrictive covenants as to the use of land, though enforceable as between the parties thereto **and their successors with notice,** do not convey an interest in the land. Under this view, a restriction does not run with the land, nor is it a legal exception or reservation out of it. (Emphasis added.)

We have never been confronted with the doctrine of enforcement in equity of equitable servitudes pursuant to a contract theory. This approach has not been endorsed nor rejected by our court. However, in *Hein v. Lee,* 549 P.2d 286 (Wyo.1976), the court suggests that we have embraced the contract theory of enforcement of covenants, not only as between the contracting parties, but also as to third parties with notice of the contract. In *Hein,* we held recorded restrictive covenants were not effective to provide constructive notice to a third-party purchaser because the recorded document was not properly acknowledged. Hein, the third-party purchaser, had received copies of those covenants from the original seller of the land, and this court ruled the covenants were effective against Hein because of his actual notice. We there stated:

> Neither the fact that they [restrictive covenants] do not appear in this deed nor the fact that they are not properly placed on public record relieves the appellant [Hein]

of their burden because he had actual notice. (Citations omitted.)

*Hein,* 549 P.2d at 292.

A covenant, neither included in a deed nor properly placed of record, cannot be one that runs with the land. Still, in *Hein,* we approved the enforcement of such covenants.

The availability of a doctrine of equitable enforcement of restrictive covenants is perhaps more clearly approved in *Bowers Welding and Hotshot, Inc. v. Bromley,* 699 P.2d 299, 303 (Wyo.1985), where we said, relying upon 20 Am.Jur.2d *Covenants, Conditions, and Restrictions* §§ 307, 308, 871–72:

> If the purchaser has actual notice of an agreement containing restrictions, it is not material that the agreement is not of record. At least, where it does not appear that the agreement was of record, the purchaser with actual notice has been held bound by the restrictions. **Even notice of a parol agreement binds the purchaser to comply with the restrictions.** (Emphasis added.)

We are in accord with the statement by the district court that, "[a] contract theory of restrictive covenants, enforceable through the courts, makes sense in contemplation of modern land use." It is not unusual for land, even substantial tracts, to be purchased by a contract for deed with the intent of creating a subdivision. Even though the purchaser under the contract for deed is an owner of an equitable interest, that owner should not be foreclosed from structuring restrictive covenants for the subdivision. Such a limitation would not comport with logic or valid public policy in the late Twentieth Century. The only prerequisite to enforcement should be the notice to the subsequent owner of the restrictions coupled with the requisite intent on the part of the seller that those covenants would be binding upon subsequent purchasers with notice. *See Bowers Welding.*

The trial court charged Streets with record notice of these Restrictive Covenants. The intention of J M, the seller of tracts within the subdivision, is plain that these forty-acre tracts were to be developed according to a common scheme or plan, and that each tract would be both burdened by, and receive the

benefit of, the Restrictive Covenants. Streets had notice by virtue of the recording of the Restrictive Covenants by J M, which were applicable to the entire 4,708–acre tract. Streets was bound by them, and Keiderling had no greater rights than Streets.

Streets offers a litany of awkward scenarios that are claimed to arise from the recognition of equitable servitudes that can be enforced in equity. While unique problems may arise in other cases, none of those evil spirits are present in the case before us. We do not perceive them to be valid concerns. There is no possibility the holder of an equitable interest, who creates equitable servitudes, could claim them to be valid against the owner of the legal title in the event of default. There is a possibility under certain circumstances that a lack of uniformity could develop within the tract which is the subject of the subdivision. The pertinent authorities in this area indicate those possibilities are not unusual. Problems such as those can be resolved, however, and the fact they may exist in other cases should not excuse Streets and Keiderling from compliance in this case. These parties simply chose not to comply with valid conditions imposed upon use of their land, which they understood and knew about when the land was acquired.

We affirm the Order for Permanent Injunction entered in the trial court in all respects.

MACY, Justice, dissenting.

I dissent from the majority's decision in this case. I would reverse the district court's decision and remand the case because I am of the opinion that a party who is simply an equitable owner of real property cannot impose effective restrictive covenants against the property and that the covenants should not be enforced as being equitable servitudes.

The majority glosses over the primary legal question which must be answered in order to decide this case: Who can impose valid restrictions on the use of real property?

The majority fails to take into account the difference between the rights of a party who holds legal title to the property and the rights of a party who owns only equitable title to the property. *See Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 601 (Wyo.1989); *McKone v. Guertzgen,* 811 P.2d 728, 730 (Wyo.1991).

I agree with the majority's conclusion that J M Land could not impose valid restrictive covenants that run with the land. In order for restrictive covenants to run with the land, privity of estate must exist between the original parties to the covenants. *See Hein v. Lee,* 549 P.2d 286, 292 (Wyo.1976); *Lingle Water Users' Ass'n v. Occidental Building & Loan Ass'n,* 43 Wyo. 41, 297 P. 385, 391–92 (1931). "It is ... a general principle that covenants run only with the legal title to lands and tenements, as distinguished from the equitable title." 20 AM.JUR.2D *Covenants, Conditions, and Restrictions* § 33, at 604 (1965). Since J M Land was the only party who signed the restrictive covenants and it did not have legal title to the property, the covenants were not effective.

The majority holds that, even though the restrictive covenants recorded by J M Land were not valid covenants that run with the land, the covenants were enforceable as being equitable servitudes pursuant to a contract theory. The majority indicates that a valid agreement imposed restrictions upon the property and that the agreement was binding against Streets because she took the property with notice of the restrictions.[1] That analysis presupposes that J M Land created a valid contractual obligation. In order to have an enforceable equitable servitude, a covenant must exist which, "under the rules of contract interpretation, is binding between covenantor and covenantee." ROGER A. CUNNINGHAM ET AL., THE LAW OF PROPERTY § 8.23 at 488 (1984).

An essential element of an equitable servitude is a written instrument between the grantor and the grantee showing their joint intent that the grantee's title is conveyed subject to the common plan of re-

---

1. J M Land does not argue cogently that it should have been able to enforce the restrictions against Streets under the equitable servitude theory. Instead, J M Land argues that it could impose valid restrictive covenants against the property because, under the doctrine of equitable conversion, its interest in the property should be considered as being an interest in real property.

strictions. The grantor's intent, although readily ascertainable from the common plan of restrictions, is insufficient.

*Scaringe v. J.C.C. Enterprises, Inc.*, 205 Cal. App.3d 1536, 253 Cal.Rptr. 344, 349 (1988) (citation omitted). The majority does not explore how this supposed "contract" came into existence.

J M Land did not have legal title to the property when it recorded the restrictive covenants. Ruby Ranch apparently supplied deeds to the individual purchasers as J M Land sold the tracts in the subdivision. J M Land, therefore, does not appear in the chain of title to many of the tracts, and, for many of the transactions, the record does not demonstrate that J M Land was actually involved. The evidence simply does not reflect that J M Land and all the individual tract owners had a joint intent to restrict the use of the property. A legal basis does not exist for enforcing the covenants as being equitable servitudes.

It is a change in Wyoming law for us to enforce restrictions on the use of real property simply because a party takes the property with notice of the restriction, without requiring that the other requirements for binding restrictions be met. *See, e.g., Hein*, 549 P.2d 286; *Remilong v. Crolla*, 576 P.2d 461 (Wyo. 1978). Therefore, at the very least, this ruling should apply prospectively only so that landowners will have the opportunity to address this issue when they enter into land sale contracts.