2006 WY 60

**GRANITE SPRINGS RETREAT ASSOCIATION, INC.,**
Petitioner,

v.

**Art and Kay MANNING, Respondents.**

No. 05–149.

Supreme Court of Wyoming.

May 12, 2006.

Representing Petitioner: Julie Nye Tiedeken, of Tiedeken & Scoggin, P.C., Cheyenne, Wyoming.

Representing Respondents: Arthur L. and Katherine L. Manning, pro se, Cheyenne, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Granite Springs Retreat Association, Inc. (Granite Springs) brought a small claims action in circuit court seeking to collect homeowner's association dues in the amount of $265.44 from Mr. and Mrs. Manning. Although the case began as a simple collection action, the order ultimately entered by the circuit court reflects that it evolved into a determination regarding the validity and application of restrictive covenants pertaining to real property. This issue implicates title to real property and deprived the circuit court of subject matter jurisdiction. Pursuant to Wyo. Stat. Ann. § 1–21–102 (LexisNexis Supp.2004), the case should have been certified to the district court.

## ISSUE

[¶ 2] Granite Springs presents the following issue for review:

Does the Circuit Court have exclusive jurisdiction of a case in which the prayer for recovery of money does not exceed seven thousand dollars in which the Court must decide if the Defendant's real property is subject to restrictive covenants?

Mr. Manning restates the issue as:

Does the circuit court have subject matter jurisdiction to encumber title to real property?

## FACTS

[¶ 3] Granite Springs is a homeowner's association which assesses yearly dues against the owners of the lots in its subdivision for maintenance of roads, common areas, and for other expenses. Mr. and Mrs. Manning own a lot within the subdivision. On September 28, 2004, Granite Springs filed a complaint in the circuit court of Laramie County seeking money damages in the amount of $265.44 for dues owed by Mr. and Mrs. Manning. The Mannings defended the action by claiming the restrictive covenants did not apply to their tract of land. After reviewing all of the evidence, the circuit court entered its Judgment. The court stated:

The facts as established during the hearing were:

1. Art and Kay Manning own a tract in a subdivision known as Granite Springs Retreat, hereinafter referred to as Granite Springs, located west of Cheyenne, Laramie County, Wyoming.

2. Granite Springs was created by two separate recorded plats known as: 1) *Granite Springs Retreat, first filing,* which contained tracts one through eight; and *Granite Springs Retreat, Second Filing,* which contained tracts nine th[r]ough sixty-three.

3. Lorenz Ranch, Inc. originally owned the land that formed Granite Springs.

4. Lorenz Ranch, Inc. conveyed the First Filing I to Deward Miller on August 16, 1976, and the plat was filed on October 1, 1976.

5. On October 4, 1976, a Declaration of Protective Covenants was recorded, for the Granite Springs subdivision. [Plaintiff's Exhibit 2]. The Protective Covenants did not describe the land restricted and there was no mention

if the land restricted was limited to the land in the first filing or included land in a subsequent filing.

6. Granite Springs Retreat by Deward Miller executed these Covenants. [Plaintiff's Exhibit 2]. The Covenants provided in part that a homeowner's association could be formed if desired by the residents. This association would allow the homeowners to assess dues to the tract owners in order to provide for road maintenance, snow removal, insurance, maintenance of common areas, and other costs of maintaining the subdivision. The covenants further provided that if an association was formed all owners agreed to become members and to be subject to a dues assessment.

7. After the filing of the Covenants, Miller recorded a warranty deed for the land ... in the second filing on March 23, 1977. [Plaintiff's Exhibit 5].

8. Lorenz Ranch, Inc., and Deward Miller were involved in a business relationship during the time of the filing of both plats and the filing of the covenants. Deward Miller filed more than one plat with the Laramie County Planning Department before he was the record owner of the land in question.

9. Members of both the families of the owners of the Lorenz Ranch, Inc., and the Deward Miller agreed that Deward Miller had an equitable interest in the land of the second filing at the time the covenants were recorded. This evidence was uncontroverted.

10. On September 15, 1977, Miller transferred all of the property within the *First* and *Second Filings,* with the exception of one parcel of land transferred three days later to Happy Jack Stable and Lounge, Inc. [Plaintiff's Exhibit 7].

11. Miller attempted to amend the Covenants by recording an Amended Declaration of Protective Covenants, for the purpose of designating tracts four and five for commercial use on February 23, 1978, after he had divested himself of all interest in the land. [Plaintiff's Exhibit 7].

12. Granite Springs homeowners established the Granite Springs Retreat Association, ... (the Association) on September 1, 1987. [Plaintiff's Exhibit 7].

13. The Association assesses dues. The defendants are the only members of the Association who have not paid their dues to date.

14. The Defendant[s] purchased the land subject to any and all restrictions, reservations, covenants and easements of record on April 26, 1990. [Plaintiff's Exhibit 5].

15. The Defendant[s] paid the Association dues from 1990 until July 1, 2002. The Defendant[s] owe the Association dues for July 1, 2002 through June 30, 2003 in the amount of $100.00 and a 12% penalty of $12.00. They also owe dues and penalties for the period of July 1, 2003 through June 30, 2004 in the amount of $153.44. [Plaintiff's Exhibit 1].

16. Even though there were no covenants filed in the index at the Laramie County Clerk's Office on Defendant's property, the Defendant[s] were given a copy of the covenants when they purchased the property.

17. Art Manning, one of the Defendants, had been active in the homeowners Association by serving on the Board, serving as the President of the Association and attending meetings.

18. The Defendants stopped paying homeowner Association dues after a series of court actions confused the issue of whether covenants were on the land they had purchased.

19. In 1993, a Notice [of] Contract for Deed was filed, indicating that Happy Jack Stable and Lounge was selling tract five of the *Second Filing* to Bobby and Bridget Wallace. Two years later, the Wallaces filed their own Notice of Contract for Deed indicating that they were selling to Mill-

heiser and Barroni. Millheiser and Barroni brought a declaratory judgment action and an action for damages, against the Wallaces and the Association, because they entered into the transaction with the understanding that there was no restriction on commercial use of tract five because of the amended covenants. The District Court entered a summary judgment in favor of Millheiser and Barroni ordering that the Amended Covenants were void because they were filed after Miller had conveyed all of his interest in the property and therefore he could not amend the covenants. *Millheiser, et. al. v. Wallace, et. al.,* Docket No. 148–238, entered May 20, 1999. [Defendant's Exhibit A].

20. Happy Jack Stable & Lounge, Inc. sued the Association to reform the covenants and the Court relying on its ruling in *Millheiser, et. al. v. Wallace, et. al., supra,* granted the Association's motion for summary judgment and subsequently denied a motion for reconsideration. In the motion for reconsideration, Happy Jack Stable & Lounge, Inc., argued that the covenants did not restrict the land in the second filing. The District Court denied the motion to reconsider without comment. *Happy Jack Stable & Lounge, Inc. v. Granite Springs Retreat Association, Inc.,* Docket 156 No. 559, entered June 19, 2001, and July 10, 2001. [Defendant's Exhibit B].

21. Another landowner in Filing 2 failed to pay his homeowner's Association dues and sued in small claims court to avoid payment. *Reynolds v. Lombardi, et. al.,* Docket # SC–0309–0027. This court found that the covenant[s] were valid and enforceable and awarded the Association the outstanding dues. [Plaintiff's Exhibit 6]. The judgment was affirmed in District Court. *Reynolds v. Lombardi,* Docket No. 163–008, entered March 23, 2004. [Plaintiff's Exhibit 7]. The Courts found the following:

... Upon review of the record and briefs of the parties this court finds that the prior summary judgment did not void the Original Covenants, only the Amended Covenants and, therefore, Reynolds was still subject to the Association's dues.

In his reply brief, Reynolds modified his argument to state that because the Original covenants were filed prior to the *Second Filing,* and his tract was part of the *Second Filing,* the Original Covenants could not apply to his property or any of the tracts on the *Second Filing.* Although an interesting issue, this is a new argument that was not raised below. Matters raised for the first time on appeal will not be considered. *Yates v. Yates,* 81 P.3d 184, 188 (Wyo.2003) (citations omitted).

22. The only legal or factual issue is whether the covenants filed prior to the time that the person, Deward Miller, filing the covenants having a warranty deed for the Defendant's land binds the Defendants.

23. The two District Court opinions that dealt with Miller's attempt to amend the covenants after he had conveyed all interest in the land are not applicable to the issue in the case. Those two decisions were related to the amended covenants only and not to the original covenants. *Happy Jack Stable & Lounge, Inc. v. Granite Springs Retreat Association, Inc.,* Docket 156 No. 559, entered June 19, 2001, and July 10, 2001. [Defendant's Exhibit B]; *Millheiser, et. al. v. Wallace, et. al.,* Docket No. 148–238, entered May 20, 1999. [Defendant's Exhibit A].

24. The Supreme Court decision dealt with the rescission of the contract for sale of land for commercial purposes, the decision upheld the determination that the covenants had not been amended to allow for commercial use. In fact the rescission was allowed because the original covenants did not allow commercial use. *Millheiser v.*

*Wallace,* 2001 WY 40, 21 P.3d 752 (Wyo.2001).

25. Likewise in *Reynolds v. Lombardi,* Docket No. 163–008, entered March 23, 2004, [Plaintiff's Exhibit 7] the District Court declined to deal with the issue in this case because it had not been originally litigated.

26. Restrictive covenants are contractual. *Hutchison v. Hill,* 3 P.3d 242 (Wyo. 2000); *McLain v. Anderson,* 933 P.2d 468, 474 (Wyo.1997). ... Restrictive Covenants act as an equitable servitude and are enforceable in equity. *Streets v. J.M. Land & Developing Co.,* 898 P.2d 377, 379 (Wyo.1995). A good explanation is contained in 20 Am.Jur.2d Covenants § 43:

The[re] is considerable authority to the effect that such a covenant creates what is familiarly know[n] as equitable easements of servitude, passing with a conveyance of the land and enforceable against subsequent grantees with notice.

27. A helpful decision was announced in *Streets v. J.M. Land & Developing Co., supra.* There the Supreme Court found that restrictive covenants could be enforced against a subsequent purchaser with notice if an owner of an equitable title imposes the restrictive covenants.

28. *Streets v. J.M. Land & Developing Co., supra* is directly on point. There is uncontroverted evidence that Miller had an equitable interest in the land when he filed the covenants. The Defendants had full notice of the covenants. Therefore as the Court found in *Streets v. J.M. Land & Developing Co., supra* at 380: "The only prerequisite to enforcement should be the notice to the subsequent owner of the restrictions coupled with the requisite intent on the part of the seller that those covenants would be binding upon subsequent purchasers with notice."

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a Judgment shall be granted in favor of the Plaintiff against the Defendant in the amount of $265.44, and service fees of $15.00 and the filing fee of $10.00 for a total judgment of $290.44.

The Mannings appealed this judgment to the district court. The district court determined that Wyo. Stat. Ann. § 5–9–128 (LexisNexis 2003) does not contain a provision which vests jurisdiction in the circuit court to determine the effect of restrictive covenants on title and, therefore, the circuit court exceeded the scope of its jurisdiction. It vacated the judgment entered against the Mannings. Granite Springs filed a petition for writ of review, which we granted.

## STANDARD OF REVIEW

[¶ 4] Jurisdictional questions are reviewed *de novo* pursuant to this Court's inherent power and our duty to address jurisdictional defects on appeal. *Weller v. Weller,* 960 P.2d 493, 494 (Wyo.1998). "If a lower court acts without jurisdiction, this court will notice the defect and have jurisdiction on appeal, not on the merits, but merely for the purpose of correcting the error of the lower court in maintaining the suit." *Id.*

## DISCUSSION

[¶ 5] Granite Springs requests that this Court reverse the district court's decision. It contends that the district court erred in finding that the judgment exceeded the scope of the circuit court's subject matter jurisdiction.

[S]ubject matter jurisdiction refers to the power to hear and determine cases of the general class to which the proceedings in question belong. The issue of subject matter jurisdiction is so fundamental that it cannot be waived, can be raised on the court's own motion, and can be raised at any time, even on appeal. This court has repeatedly emphasized the implications of this precept:

It is fundamental, if not axiomatic, that, before a court can render any decision or order having any effect in any case or matter, it must have subject matter jurisdiction. Jurisdiction is essential to

the exercise of judicial power. Unless the court has jurisdiction, it lacks any authority to proceed, and any decision, judgment, or other order is, as a matter of law, utterly void and of no effect for any purpose. Subject matter jurisdiction, like jurisdiction over the person, is not a subject of judicial discretion. There is a difference, however, because the lack of jurisdiction over the person can be waived, but lack of subject matter jurisdiction cannot be. Subject matter jurisdiction either exists or it does not and, before proceeding to a disposition on the merits, a court should be satisfied that it does have the requisite jurisdiction.

*Mutual of Omaha Ins. Co. v. Blury–Losolla,* 952 P.2d 1117, 1119–1120 (Wyo.1998) (internal citations and quotation marks omitted).

[¶ 6] Article 5, Section 1, of the Wyoming Constitution vests the judicial power of the state "in a supreme court, district courts, and such subordinate courts as the legislature may, by general law, establish and ordain from time to time." *Id.* District courts have general original jurisdiction in all cases "in which jurisdiction shall not have been by law vested exclusively in some other court." *Joslyn v. Professional Realty,* 622 P.2d 1369, 1373 (Wyo.1981) (quoting Art. 5, § 10, Wyoming Constitution). Circuit courts have exclusive original civil jurisdiction for "[a]n action where the prayer for recovery is an amount not exceeding seven thousand dollars ($7,000.00), exclusive of court costs[.]" Wyo. Stat. Ann. § 5–9–128(a)(i).[1]

■ [¶ 7] Granite Springs relies on Wyo. Stat. Ann. § 5–9–128(a)(i) to support its position that the circuit court had exclusive original civil jurisdiction in this case because its prayer for relief was $265.44. Granite Springs contends that for purposes of jurisdiction, it is irrelevant that the Mannings claimed the restrictive covenants did not apply to their property. It asserts that neither the Constitution of the State of Wyoming nor any provision of Wyoming statutes provide that district courts have exclusive jurisdiction over actions where there is an issue concern-

---

1. The full text of Wyo. Stat. Ann. § 5–9–128 (LexisNexis 2003) provides as follows:

(a) Each circuit court has exclusive original civil jurisdiction within the boundaries of the state for:

(i) An action where the prayer for recovery is an amount not exceeding seven thousand dollars ($7,000.00), exclusive of court costs;

(ii) Actions to recover specific personal property the value of which does not exceed seven thousand dollars ($7,000.00), exclusive of court costs and shall be prosecuted in accordance with W.S. 1–15–301 through 1–15–306;

(iii) Actions to foreclose or enforce a lien on or security interest in personal property perfected under the Uniform Commercial Code, W.S. 34.1–1–101 through 34.1–10–104, when the amount claimed on the lien or security interest does not exceed seven thousand dollars ($7,000.00), exclusive of court costs;

(iv) Actions for small claims as provided by W.S. 1–21–201 through 1–21–205;

(v) Actions for forcible entry or detainer as provided by W.S. 1–21–1001 through 1–21–1016;

(vi) Actions to foreclose and enforce the following statutory liens only, when the amount claimed on the lien does not exceed seven thousand dollars ($7,000.00) exclusive of court costs:

(A) Construction liens as provided by W.S. 29–2–101 through 29–2–109 [29–2–101 through 29–2–111];

(B) Liens for labor and materials as provided by W.S. 29–4–101 and 29–4–102;

(C) Liens for labor and services as provided by W.S. 29–5–101 through 29–5–106 and 29–7–101 through 29–7–202; and

(D) Liens for taxes as provided by W.S. 39–15–108(d) and 39–16–108(d).

(vii) Actions to dispose of an abandoned vehicle as provided by W.S. 31–13–112(e), regardless of the value of the abandoned vehicle.

(b) The circuit court may issue writs of attachment or garnishment as provided by W.S. 1–15–101 through 1–15–212 and 1–15–401 through 1–15–511, and may issue judgment, execution and stay of execution, and order the sale of the property seized under execution as provided by W.S. 1–19–101 through 1–19–108 and 1–21–401 through 1–21–703. A writ of execution issuing from a circuit court shall be in the form and subject to the provisions of W.S. 1–17–308.

(c) The judge may submit to arbitration any civil matter pending in circuit court, upon agreement of the parties as provided by W.S. 1–21–801 through 1–21–804, or upon application of either party showing an arbitration agreement and refusal of the opposing party to arbitrate as provided by W.S. 1–36–101 through 1–36–119.

(d) The provisions of W.S. 5–1–107 pertaining to the exercise of personal jurisdiction apply in the circuit courts.

ing the title to real estate or the effect of restrictive covenants on title to real estate. Although Granite Springs recognizes statutory sections, e.g. Wyo. Stat. Ann. § 1–21–102 and Wyo. Stat. Ann. § 5–4–108 (LexisNexis 2003),[2] which previously prevented county courts and justices of the peace from hearing actions in which the title to real estate comes into question, it claims that there is no similar provision requiring circuit courts to certify the case to district court. Thus, Granite Springs concludes that "the Circuit Court has jurisdiction to consider matters which involve issues which pertain directly or indirectly to title and/or boundaries of land so long as the prayer for recovery does not exceed seven thousand dollars ($7,000.00)."

[¶ 8] Granite Springs is correct in its assertion that prior to March 3, 2004, Wyo. Stat. Ann. § 1–21–102 applied only to the justice of the peace courts. However, effective March 3, 2004, the legislature revised that provision to read as follows:

If it appears from the pleadings or the evidence of either party at the trial of any case in **circuit court** that the title or boundaries to lands are in question, the judge shall immediately make an entry thereof in the docket, cease all further proceedings, and certify to the district court of the county a transcript of all entries made in the docket relating to the case in the same manner and within the same time as upon appeal. The case shall then be conducted in the district court as though appealed to the district court for trial de novo, except that no bond as on appeal or payment of costs in the circuit court is required for the transfer to the district court.

Wyo. Stat. Ann. § 1–21–102 (LexisNexis Supp.2004) (emphasis added). This statute was in effect when Granite Springs filed its complaint. Under this statutory provision,

the circuit court was required to certify the case to the district court if the title to the Mannings' property was in question.

[¶ 9] Whether a determination of the validity of restrictive covenants calls title into question as contemplated by Wyo. Stat. Ann. § 1–21–102 is a matter of statutory interpretation. When interpreting statutes:

We look first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court.

When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction. Instead, our inquiry revolves around the ordinary and obvious meaning of the words employed according to their arrangement and connection. In doing so, we view the statute as a whole in order to ascertain its intent and general purpose and also the meaning of each part. We give effect to every word, clause and sentence and construe all components of a statute in pari materia.

*Carrillo v. State (In re Carrillo)*, 2005 WY 31, ¶ 5, 107 P.3d 786, 788–89 (Wyo.2005) (citations omitted).

[¶ 10] In framing its issue and in its opening brief, Granite Springs did not dispute that questions of title include issues of whether a property is bound by restrictive covenants. Rather, its argument focused on the premise that circuit courts are not required to certify a case to district court once

**2.** Wyo. Stat. Ann. § 1–21–102 (LexisNexis 2003) (amended by Laws 2004, ch. 42, § 1) provided:

If it appears from the pleadings or the evidence of either party at the trial of any case in justice court that the title or boundaries to lands are in question, the justice shall immediately make an entry thereof in the docket, cease all further proceedings, and certify to the district court of the county a transcript of all

entries made in the docket relating to the case in the same manner and within the same time as upon appeal. . . .

*See also* Wyo. Stat. Ann. § 5–4–108 (LexisNexis 2003) (repealed by Laws 2004, ch. 42, § 2) which stated, "Justices of the peace shall not have cognizance of any action in which the boundaries of, or the title to real estate shall come into question."

title to the property is in question. Belatedly, in its reply brief, Granite Springs contended that the circuit court's "decision in no way affected the title to the Manning's land." Granite Springs provided no analysis or citation to legal authority in support of its assertion.

[¶ 11] Generally, title is "[t]he coincidence of all the elements that constitute the fullest legal right to control and dispose of property or a claim." The American Heritage College Dictionary 1444 (4th ed.2004). Stated another way, title is "[t]he aggregate evidence that gives rise to a legal right of possession or control." *Id.* Restrictive covenants limit permissible uses of land and are considered a cloud on title. *See* Restatement (Third) of Prop.: Servitudes § 1.3 (2000); Roger A. Cunningham et al., *The Law of Property* § 8.13, at 467 (2nd ed.1993) (stating covenants are a cloud upon title). *See also* 20 Am.Jur.2d *Covenants, Etc.* § 280 (1995) ("A court may cancel a restrictive covenant as a cloud on title...."). A cloud on title is defined as "[a]n outstanding claim or encumbrance which, if valid, would affect or impair the title of the owner...." Black's Law Dictionary 255 (6th ed.1990). "Since covenants impose restrictions upon use and enjoyment of the burdened land, they are burdens or clouds upon title. In theory they make title less marketable, against the law's long bias in favor of unencumbered, marketable title." Roger A. Cunningham et al., *The Law of Property* § 8.13, at 467 (2nd ed.1993).

[¶ 12] In this action, Granite Springs sought to enforce the covenant that permits the assessment of homeowner's association dues. This is one of several covenants contained in the Declaration of Protective Covenants. The other covenants restrict, *inter alia,* the type, size and location of any dwellings built and the types of vehicles that may be parked or stored along the subdivision streets. The covenants prohibit certain types of commercial business trade from being conducted within the subdivision, the discharging of firearms, and they require that outdoor clothes drying be conducted in the yard away from the street. Permission must also be obtained from the Architectural Control Committee before clearing or killing any trees. These covenants, if found applicable to the Mannings' lot, would place restrictions on the Mannings' right to use, control, and enjoy their property. Accordingly, we conclude Wyo. Stat. Ann. § 1–21–102 encompasses questions concerning the validity of restrictive covenants because, if applicable, the covenants would affect or impair the title of the owner.

[¶ 13] At trial, the Mannings claimed that the restrictive covenants did not apply to their tract of land. The defense asserted by the Mannings raised a question of title as contemplated by Wyo. Stat. Ann. § 1–21–102. At that point, the circuit court was without subject matter jurisdiction to consider this matter and the case should have been certified to the district court pursuant to Wyo. Stat. Ann. § 1–21–102. We affirm that portion of the district court's order setting aside the circuit court's judgment. We remand this matter to the district court for remand to the circuit court. The circuit court shall certify this case to the district court in accordance with the statute.